(38 Misc. Rep. 97.)

### ROBINSON v. SUPREME COMMANDERY, UNITED ORDER OF THE GOLDEN CROSS OF THE WORLD.

(Supreme Court, Trial Term, New York County.  May, 1902.)

1. LIFE INSURANCE—APPLICATION—WARRANTIES.
   Where a proposal for life insurance is made a part of the contract by the terms of the policy, written statements therein are warranties.

2. SAME—BREACH.
   Where applicant for life insurance, in answer to a question whether he has any insurance on his life, answered in the affirmative, and in answering further question as to what company and what amount states an existing insurance, but omits to state another small one, there is no breach of the warranty that the statement shall be true, as the applicant does not warrant that he will not conceal facts in reference to the questions.

3. PRIVILEGED COMMUNICATIONS—PHYSICIAN'S CERTIFICATE—CAUSE OF DEATH.
   Code Civ. Proc. § 955, makes an official record of a department of the city of New York on file for 20 years presumptive evidence of its contents and receivable in evidence in any court in the state in any controversy.  Code Civ. Proc. § 834, forbids the admissibility of a physician's certificate as to the cause of death.  *Held*, that a physician's certificate as to the cause of death of the father of an applicant for life insurance, on file in the city health department for more than 20 years, is inadmissible to prove the falsity of written statements of the applicant as to his father's age at the time of his death and as to the cause of his death.

4. SAME.
   An applicant for an insurance policy named a physician of whom the insurer might inquire as to the health of the applicant before accepting the risk.  *Held*, that where the insurer had not, before trial of an action on the policy, after the death of the insured, taken advantage of the offer, he could not at the trial call the physician to testify as to such facts in contradiction of the statements of the applicant, as there was no waiver of Code Civ. Proc. § 834, excluding such information as privileged.

Action by Margaret Robinson against the Supreme Commandery, United Order of the Golden Cross of the World.  Motion to set aside verdict and for the direction of a verdict.  Denied.

Blandy, Mooney & Shipman, for plaintiff.
Atwater & Cruikshank, for defendant.

GREENBAUM, J.  This is an action upon a $2,000 benefit certificate issued by the defendant corporation to the deceased, a son of the plaintiff, for her benefit.  It was tried before the court and a jury. Each side moved for the direction of a verdict, whereupon the court directed it for the plaintiff.  A motion to set aside the verdict was entertained, and the parties stipulated that the court, after submission of briefs, might direct a verdict for either plaintiff or defendant, according to its findings and determination.

The deceased made application to the defendant organization on April 3, 1898, and in his statement were the following questions and answers:

"Q. Is there now any insurance on your life?  A. Yes.  Q. If so, in what company and for what amount?  A. Temples of Liberty, $1,000.  Q. Is your father alive or dead?  A. Dead.  Q. Age at death?  A. 35.  Q. Cause of

death? A. Pneumonia. Q. Have you ever had or been predisposed to any of the following diseases? Habitual cough? Bronchitis? Inflammation of the lungs? Fistula? To each of which he answered, 'No.' "

In his petition for membership he says:

"The questions and answers, constituting the application, form a part of the contract in case a benefit certificate be issued thereupon;" and also: "It is hereby agreed by the undersigned that if there be, in any of the answers herein made, any untrue or evasive statements, misrepresentations. or concealment of facts, or if after admission to the order my connection therewith should be discontinued, voluntarily or involuntarily, then all claims on the benefit fund of the United Order of Golden Cross shall be forfeited and lost by me.

"[Signed]                 William Sargison Robinson, Applicant."

On May 23, 1895, the certificate was issued by the order to the deceased, and was accepted by him by his signing thereon a statement as follows: "I accept this certificate on the conditions named herein." The certificate is stated to be issued "upon condition that the statement made by him (applicant) in his application for membership in said commandery, * * * be made a part of this contract." The insured died on January 28, 1899. Upon the trial it was shown that in fact the insured had, in addition to the insurance mentioned in the application, insurance in the Prudential Insurance Co., of Newark, N. J., in the sum of $158.

The main contentions of the defendant are: First. That the statements made by the deceased in the application upon which the certificate in question was issued must be construed as warranties. Second. That, if these statements are treated as warranties, that they were untrue in three material respects, to wit: That the deceased omitted to disclose insurance for $158, issued to him by the Prudential Insurance Company; that he made a false statement as to the cause of his father's death and his father's age at death; and that he made a false statement as to his own physical condition. Third. That in support of the falsity of the statement as to the cause of his father's death, and his father's age at death, it was competent to introduce in evidence the death certificate of the father, who had died upwards of 20 years ago, in the county of New York. Fourth. That, in proof of the falsity of the statement respecting the physical condition of the deceased, the testimony of the physician who treated him was competent in view of the fact that the application referred the defendant to his physician by name, which, it is claimed, constituted a waiver of section 834 of the Code of Civil Procedure.

The first inquiry upon these motions is whether the "statements" made by the deceased are to be construed as warranties or as representations. The question seems no longer an open one in this state. By a long line of authorities it is established that statements contained in a proposal upon which a policy of insurance issues, and which proposal is by the terms of the policy made a part of the contract, are warranties. Ripley v. Insurance Co., 30 N. Y. 136, 86 Am. Dec. 362; Foot v. Insurance Co., 61 N. Y. 571; Clemans v. Supreme Assembly, 131 N. Y. 485, 30 N. E. 496, 16 L. R. A. 33; Foley v. Royal Arcanum, 151 N. Y. 196, 45 N. E. 456, 56 Am. St. Rep. 621. Plaintiff relies upon the case of Fitch v. Insurance Co.,

59 N. Y. 557, 17 Am. Rep. 372, in opposition to the theory of warranty. In the Fitch Case, the policy and statements contained representations and assurances by the defendant that fraud alone, not a mere unintentional misstatement, would vitiate the policy or be used as a defense. Under that state of facts the court would not entertain the contention that the statements were warranties. No such state of facts exists in this case. It is true that the application and the policy refer to the statements, not as warranties, but as "statements," and that the word just quoted appears in bold type; but the fact that the statements are called such also appears in the cases above cited, and, being unable to distinguish this case from them, we are bound to apply the settled rule.

Conceding, then, that the statements are warranties, upon what breaches does the defendant rely, and what breaches are proven? It was proven that the plaintiff, at the time he made the statement as to insurance in the other order, carried another insurance in a small amount in a company whose name he did not mention. Here, certainly, was a fact which deceased did not disclose. But was it a concealment of a fact within the meaning of the statement? Upon a strict construction, to which the insured is entitled as against the insurer, it may be held that it was not. He was asked, "Is there now any insurance on your life?" to which he answered affirmatively. Then, "If so, in what company, and for what amount?" To which the reply above quoted was given. It will be seen that the second query was in the singular, and, in the ordinary use of language, it may well be that the insured was misled, and not unreasonably, into understanding that the answer was a full compliance. But, conceding even that there was a concealment, it is established that such concealment does not constitute a breach of warranty, for the applicant does not warrant that he will not conceal facts in reference to the queries. See Dilleber v. Insurance Co., 69 N. Y. 262, 25 Am. Rep. 182. The case cited by the defendant (Wright v. Society, 50 How. Prac. 367) is quite distinguishable, for there the question was, "Are you now insured? If so, for how much?"—to which the assured answered that he was, and for $10,000. It appeared that he was insured, besides, for $10,000, $15,000, and $10,000. The distinction is apparent that that question called for the total amount of his insurance, and that his answer was not the truth.

The next question in the case affects the inquiry as to the cause of the father's death and the admissibility in evidence of the physician's certificate, on file in the health department of this city, in support of the cause of the death and the father's age at death. If held competent the certificate would prove that the father died at the age of 33 and of consumption, instead of at the age of 35 and of pneumonia, as stated by the applicant. Section 834 of the Code of Civil Procedure prohibits a physician from disclosing any information acquired in a professional capacity, necessary to enable him to act in that capacity. Certain sections of the Greater New York charter make it the duty, under pain of committing a misdemeanor, to make and file a certificate stating, among other things,

the age of the deceased and the cause of his death. Section 955 of the Code makes such records, if on file in the health department for 20 years or upwards, presumptive evidence of the contents thereof in any court in the state in any controversy and as between any parties. Though this section has been in force since 1892, no case similar to the one at bar can be found that has arisen under it. Sections 834 and 955 are not entirely consistent, and the question is, does the latter qualify or limit the former in a case where a certificate of death has qualify on file for upwards of 20 years? A study of the question exposes a somewhat curious and anomalous situation. Section 834 prohibits a physician from disclosing "any information which he acquired in attending a patient, in a professional capacity, and which was necessary to enable him to act in that capacity." The courts have repeatedly held that this section forbids a physician from testifying to the cause of the death of a patient, "not only for the purpose of prohibiting parties from the disclosure of information imparted in the confidence that must necessarily exist between physician and patient, but on grounds of public policy as well." Davis v. Supreme Lodge, 165 N. Y. 163, 58 N. E. 891. Yet we find, by reference to the public health laws (2 Birdseye Rev. St. [2d Ed.] §§ 22, 23), that the laws of this state make it obligatory upon local boards of health to make complete the registrations of deaths occurring within the municipality, and to promptly furnish the certificates of such deaths to the state bureau of vital statistics. Section 23 of the public health laws requires that

"Every undertaker, sexton or other person having charge of any corpse, shall procure a certificate of the death and the probable cause duly certified by the physician in attendance upon the deceased during his last illness," etc.

The Greater New York charter provides penalties for failure to make a true report of the cause of death. Charter, §§ 1238, 1266. Section 397 of the Penal Code provides that "a person who wilfully violates or refuses or omits to comply with any lawful order or regulation prescribed by any board of health," etc., is punishable by imprisonment not exceeding one year or by a fine not exceeding $2,000, or by both. It is thus obvious that the statutes relate not only to local but to general state requirements that a physician must disclose the cause of death of a patient upon whom he attended in his last illness. It must thus be apparent that, in case of death, where a physician has made a certificate of the cause of death, the purpose for which section 834 is designed, namely, the protection of parties from disclosures of information imparted in confidence and public policy, can no longer avail. The death certificate is required by public policy affecting the people of the state, and, therefore, higher than that which affects the private individual, and the information acquired in confidence is no longer withheld, but made public by statute. Death removes the secrecy of its cause. The questions then arise, are not the force and scope of section 834 limited in the case of death where a physician has given a certificate of the cause of death, and where the ban of secrecy has been removed by obligations of law, and are they not further limited by section 955, which permits records on file in the board of health for

a period of 20 years or upwards prior to trial of an action to be presumptive evidence of their contents? Obedience to the authority of Davis v. Supreme Lodge, supra, compels this court not to limit the scope of section 834. The facts in the Davis Case were quite analogous to those here presented. There it was attempted to defeat plaintiff's recovery by showing that two aunts of the deceased had died of consumption. A physician who attended one of the aunts was called to prove the nature of her final illness, and the testimony was excluded. The certificate made by the attending physician of the aunt in her last illness, produced from the records of the board of health, was offered in evidence and excluded. The court held that—

"The form in which the statements are sought to be introduced is of no consequence, whether as a witness on the stand or through the medium of an affidavit or certificate. All are equally under the ban." Page 163, 165 N. Y., and page 892, 58 N. E.

In the present case, the physician who attended the father of the deceased in his last illness was called, and the certificate of the same physician, taken from the records of the health board, was produced. Under the authority of the Davis Case, it was incumbent upon the court to exclude the testimony of the physician and also the certificate of the physician, unless section 955 saves it from the fate to which it would otherwise be consigned under the Davis Case. Section 955 was obviously intended to give the force of evidence to ancient documents and the recitals therein, owing to the natural difficulties that arise after the lapse of 20 years in securing original proof. But was it intended by section 955 to make that admissible which section 834 forbids? I think not.

"It is an important function of all courts to give construction to statutes, to reconcile them when there is an apparent conflict, to interpret them in such a way that they will operate reasonably, and so as not to produce absurd results." Davis v. Supreme Lodge, supra.

If it be held that section 955 repealed section 834 to the extent that a death certificate made by a physician is competent, then the absurd situation would here be presented of excluding the oral testimony of Dr. Walton, who attended the father of the deceased at the time of his death and who wrote out the death certificate as to the cause of the father's death and who was called as a witness, and admitting identical proof from the same source written on a piece of paper called a certificate. I am also not unmindful of the rule that, where one statute is general in its scope and an inconsistent one is special and affects a part of the subject-matter covered by the former, both are to be construed together, the latter as an exception to the former. Wormser v. Brown, 149 N. Y. 163, 43 N. E. 524; People v. Industrial Ben. Ass'n, 92 Hun, 311, 63 N. Y. Supp. 963. But in view of the broad rule enunciated in the Davis Case, that full and unqualified effect must be given to section 834, the court cannot construe section 955 as coming within an exception to section 834. To do this would be to produce an "absurd result," in view of the law, as laid down in the Davis Case, that section 834 is not limited in any way by the requirements of the board of health

as to death certificates. There is much force and apparent sound sense for excluding the declarations contained in the certificate of a physician. The following language in the Davis Case, 165 N. Y. 168, 58 N. E. 894, expresses the rule:

"The cause of death in a litigation between private parties, concerning the obligations of a contract of life insurance, must be established, when material, by common-law proof, and that is precisely what this court has held."

It must be apparent that great injustice might result if the hasty or ill-founded opinion of a physician or other person who may be instrumental in writing out a death certificate should be taken as proof of the cause of death and of the age of the deceased in a case where these questions might be of the highest importance. While it may be true that injustice may be done by excluding the testimony of the living physician as to the cause of the death of his patient, when the ban of secrecy has been removed by a public policy which requires him to disclose the cause of death, yet this court is bound to follow the law laid down in the court of appeals as bearing upon the precise situation which confronts it here.

The remaining question relates to the exclusion of Dr. Walton's proposed testimony as to the health and physical condition of the insured. The defendant contends that the deceased had, by a reference to the physician in his application, waived the benefits of section 834 of the Code. This contention is not, in my opinion, sound. Under section 835, now in force, the waiver must be made at the trial, but when this statement was made that was not necessary. The case of Foley v. Royal Arcanum, 151 N. Y. 197, 45 N. E. 456, 56 Am. St. Rep. 621, is cited to support defendant's contention, but the distinction between that case and the one at bar lies in this, that there the applicant expressly waived, in so many words, the benefits or privileges to which he was entitled by law, in reference to the testimony of physicians. In this case the physician is named as one of whom the defendant might inquire, as to the health of the applicant, before accepting the risk. Not availing itself of this offer, it cannot claim to do so at the trial. If defendant's were the correct construction, the applicant would have been innocently entrapped into the waiver of a privilege of whose existence he may have been ignorant. Under the views expressed above, the certificate of the physician admitted under objection, and with the stipulated reservation, is hereby stricken out, and the verdict directed for plaintiff should be permitted to stand.

The motion to set the same aside and for a direction for the defendant is denied. Ordered accordingly.