## MEYER v. SUPREME LODGE, KNIGHTS OF PYTHIAS.

(Supreme Court, Appellate Division, Second Department. April 24, 1903.)

1. INSURANCE—EVIDENCE OF PROOFS OF DEATH—WAIVER.
   In an action on a life policy, defendant, by interposing a defense of suicide and claiming and obtaining the affirmative of such issue, admitted that all the conditions precedent had been complied with, and it was not necessary for plaintiff to show that she had put in proofs of death.

2. WITNESSES—TESTIMONY OF PHYSICIAN—PRIVILEGE.
   Code Civ. Proc. §§ 834, 836, providing that information acquired by a physician while attending a patient in his professional capacity, and which was necessary for him to act in such capacity, shall not be disclosed unless the privilege is expressly waived on the trial, apply to cases where physicians professionally attend a patient who does not voluntarily require their services.

3. SAME—WAIVER.
   Such privilege was not waived by offering in evidence deceased's application for insurance, which contained a waiver of the provisions of such sections.

Appeal from Trial Term, Queens County.

Action by Henrietta Meyer against the Supreme Lodge, Knights of Pythias. From a judgment for plaintiff and an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

Laurence G. Goodhart, for appellant.

Otto H. Droege (J. Lawrence Friedmann, on the brief), for respondent.

GOODRICH, P. J. The plaintiff, being the beneficiary named in a membership certificate issued upon the application of her husband,

Emanuel Meyer, by the defendant, a fraternal mutual benefit corporation, sues for the amount of insurance on the life of her husband specified in the certificate. The defense was that Meyer had committed suicide, which by the terms of the certificate renders it null and void.

When the case came on for trial before Mr. Justice Gaynor and a jury, the defendant claimed and obtained the affirmative of the issue and introduced its evidence, and the plaintiff introduced evidence in rebuttal. At the close of the whole evidence the defendant moved for a dismissal of the complaint, "upon the ground that the plaintiff had not shown compliance with the terms of the contract by showing that she had put in proper and complete proofs of death, as provided by the by-laws and the contract." The court properly denied the motion, on the ground that the defendant, at the opening of the case, had "claimed the affirmative and admitted that all the conditions precedent had been complied with; therefore the plaintiff did not need to put in any such proof." The court submitted to the jury for special verdict the question, Did Emanuel Meyer, the husband of the plaintiff, commit suicide? And, the jury having answered the question "No," the court directed judgment for the amount of the policy, and the jury found a verdict accordingly. The defendant moved to set aside the verdict; the motion was denied, and the defendant excepted and appeals.

The only question which we are required to consider is the exception to a refusal to admit the testimony of three physicians, who attended Meyer, as to declarations concerning the cause of his death, made by him in their presence. Plaintiff's counsel objected to their admission, on the ground that such testimony was incompetent and improper, and also privileged; that any knowledge obtained by the witnesses was obtained by them while they were acting as physicians for the deceased, and was not admissible unless expressly waived at the trial. Plaintiff's counsel stated that the plaintiff did not waive any of the privileges given by sections 834 and 836 of the Code of Civil Procedure. The court excluded the testimony, and the defendant excepted. It also excepted to so much of the charge as stated that the physicians' testimony is excluded on the ground that they attended the deceased professionally.

Dr. Bruso, one of these physicians, was summoned to the Iroquois Hotel, Buffalo, about 7 o'clock in the morning, to attend Meyer, who was lying in bed in one of the rooms of the hotel. When the defendant's counsel offered to read certain portions of the deposition of Dr. Bruso, taken de bene, which disclosed information as to the condition of the patient, plaintiff's counsel objected, and the court asked: "Did this doctor treat him?" to which defendant's counsel answered: "He inserted something hypodermically into the man against his wish, which did not help him, I presume." Thereupon the court excluded the evidence, and also the other parts of the deposition, and defendant's counsel excepted. The excluded part of the deposition would have tended to show that Meyer had voluntarily taken a corrosive poison known as "Rough on Rats," with suicidal intent. Meyer was afterward taken from the hotel to the Buffalo

General Hospital, where he died.   Upon arrival at the hospital he was, by order of Dr. McCarthy, house physician of the hospital, put into a private room, where the doctor examined and treated him. Dr. McCarthy, who was examined on deposition de bene, was asked to state his diagnosis of the case, and the details of Meyer's condition, and, objection being made, the testimony was excluded, and the defendant excepted.   Dr. Thornton, junior surgeon of the hospital, assisted Dr. McCarthy in the examination and treatment of Meyer. He also was examined on deposition as to his examination of Meyer and the condition in which they found him.   The entire deposition was excluded, and the defendant excepted.

These several exceptions distinctly raise the question whether sections 834 and 836 relate to cases where physicians professionally attend a patient who does not voluntarily require their services.   There is no evidence that Meyer employed any one of these physicians, but it is none the less true that they attended him in no other than a professional capacity.   Section 834 forbids any physician "to disclose any information which he acquired in attending a patient, in a professional capacity, and which was necessary to enable him to act in that capacity."   The language is broad enough to cover cases of medical attendance, whether such attendance results from the voluntary call of the patient upon a physician or from the exigencies of the patient's situation.   If the relation is that of a physician attending a patient in a professional capacity, no matter how the relation was brought about, the sections apply.   Section 836 provides that section 834 applies to any examination of the physician, "unless the provisions thereof are expressly waived upon the trial or examination * * * by the patient. * * * But a physician * * * may upon a trial or examination disclose any information as to the mental or physical condition of a patient who is deceased, which he acquired in attending such patients professionally, except confidential communications and such facts as would tend to disgrace the memory of the patient, when the provisions of section 834 have been expressly waived on such trial or examination by the personal representatives of the deceased patient."   The record shows that the plaintiff did not waive the privilege either on the trial or examination of any of the physicians; and even where the personal representatives waive the privilege, the physician is forbidden to disclose any fact which would tend to disgrace the memory of the patient.   It can hardly be said that a declaration of Meyer that he had attempted suicide would not tend to disgrace his memory.

The defendant contends that the plaintiff at the trial waived the physician's privilege by offering in evidence Meyer's application for insurance, which contained a waiver of the provisions of sections 834 and 836, but the Court of Appeals has held the contrary in Holden v. Metropolitan Life Ins. Co., 165 N. Y. 13, 58 N. E. 771, and thus set at rest a question which has been much litigated.

There was no error in the exclusion of the testimony in question, and the judgment and order should be affirmed.

Judgment and order affirmed, with costs.   All concur.