[Civ. No. 1769.   Fourth Appellate District.—April 29, 1936.]

JOHN TURNER, Respondent, v. THE REDWOOD MU-
TUAL LIFE ASSOCIATION OF FRESNO, CALI-
FORNIA (a Corporation), Appellant.

Clyde E. Cate for Appellant.

Sutherland, Dearing & Jertberg for Respondent.

MARKS, J.—This is an appeal from a judgment in favor of plaintiff recovered on a policy of life insurance issued October 19, 1928, by defendant upon the life of Maude Turner, who died on October 23, 1934. The statement of the question for decision on this appeal, required by section two of rule VIII, Rules for the Supreme Court and District Courts of Appeal, is thus stated by defendant on the first page of his opening brief: "Is the privilege of confidential communications created by Section 1881, subdivision 4 of the Code of Civil Procedure of the State of California (*Physician and client*) waived for all purposes when it appears that a written waiver is given by the insured to an insurance association?"

Under date of October 18, 1928, Mrs. Turner signed an application for membership in the defendant corporation for a policy of insurance. The application was granted and the policy issued the following day without medical examination. The policy incorporated the application by reference. The application contained the following provision: "I hereby authorize any doctor at any time to give to said association any information he or she may have regarding me." The following questions were asked and answered: "What doctors have you consulted during last three years? Dr. Newton & Vanderburg. From what illnesses have you suffered during the last three years? Droppage of bladder (fully recovered). . . . Have you ever had an operation? Operation for small rupture, 1921 . . . I am . . . in good health and so far as I know have no disease or other condition that would prevent me from obtaining life insurance."

The answer sought to relieve defendant from liability under its policy because of alleged fraud on the part of the insured in making untrue answers in her application for the policy and in an application for its reinstatement made

July 10, 1934. Defendant asserts that Mrs. Turner had suffered from twenty-three ailments during the period between October 18, 1925, three years prior to the date of the application, and the date of her death, and that these were concealed from defendant constituting fraud on her part voiding the insurance. It sought to support this defense by the evidence of the physicians who had attended Mrs. Turner. The trial court excluded the evidence of these witnesses under the provisions of subdivision four of section 1881 of the Code of Civil Procedure. . Defendant maintains that the provisions of this section were waived by Mrs. Turner by the quoted paragraph in her application for insurance and that the testimony of the physicians who had treated her was therefore admissible. The precise question seems to be a new one in California. It must be admitted there is considerable authority from other jurisdictions supporting the position of defendant.

In approaching the question we must bear in mind two well-settled rules of construction in California. (1) That the provisions of subdivision four of section 1881 of the Code of Civil Procedure should be liberally construed in favor of the patient (*Kramer* v. *Policy Holders etc. Assn.*, 5 Cal. App. (2d) 380 [42 Pac. (2d) 665]; *McRae* v. *Erickson*, 1 Cal. App. 326 [82 Pac. 209]), and, (2) that as the application and insurance policy were both prepared by the insurance carrier, and the provisions here in question are invoked to forfeit the policy, their terms should be strictly construed against it. (*Witherow* v. *United American Ins. Co.*, 101 Cal. App. 334 [281 Pac. 668].)

A very similar situation under a statute quite like subdivision four of section 1881 of the Code of Civil Procedure, where the policy of insurance contained a waiver of the privilege of physicians, was before the Supreme Court of Iowa in the case of *Pride* v. *Interstate Business Men's Acc. Assn. of Des Moines*, 207 Iowa, 167 [216 N. W. 62, 62 A. L. R. 31]. That court said: "It is contended by appellant that by such application the insured waived the privilege of the statute on confidential communication. It is undoubtedly true that a patient may waive his privilege, and that he may do so by contract in advance. But it is contended by appellee that the proviso above quoted has no application to the particular question before us. It will be noted from a reading of the quoted proviso that the waiver speaks in

the present and in the past tense, and that it does not in terms refer to future communications. The appellant construes this proviso as though it read as follows:

" 'In so far as you are permitted to do so under the laws of the state in which you now reside, for yourself and for your beneficiary do you consent that any physician or surgeon who has been consulted by you (or may hereafter be consulted by you) may be examined,' etc. (The parentheses are ours.)

"We think appellee's position is well taken, and that the insured did not purport to waive the confidence of communications which he might thereafter make. The parenthetical words are not in the proviso, and the appellant is not entitled to enlarge, by interpretation, the policy which was formulated by itself."

The Supreme Court of Michigan also considered the same question in the case of *Gilchrist* v. *Mystic Workers of the World,* 196 Mich. 247 [163 N. W. 10], and went so far as to hold that the waiver was against public policy and void. (See, also, *Robinson* v. *Supreme Commandery,* 38 Misc. 97 [77 N. Y. Supp. 111] ; *Meyer* v. *Supreme Lodge, Knights of Pythias,* 82 App. Div. 359 [81 N. Y. Supp. 813] ; *Meyer* v. *Supreme Lodge, K. of P.,* 178 N. Y. 63 [70 N. E. 111, 64 L. R. A. 839] ; *Supreme Lodge, K. of P.,* v. *Meyer,* 198 U. S. 508 [25 Sup. Ct. 754, 49 L. Ed. 1146].)

In the case of *Geare* v. *United States Life Ins. Co.,* 66 Minn. 91 [68 N. W. 731], the Supreme Court of Minnesota had a similar question before it. It was there held that the waiver did not extend to any communications made after the date of the policy and that an application for reinstatement reverted back to the date of the policy and did not constitute a new waiver.

■ Under the foregoing rules, the only illness of deceased which the proffer of proof shows to be material here, and which was not disclosed in the application for insurance was an operation performed on deceased in 1926. It should be remembered that plaintiff disclosed an operation in 1921 and stated that she had suffered from "droppage of bladder" within three years prior to October 18, 1928. While the proffer of proof shows that the operation in 1926 was not on Mrs. Turner's bladder, but an organ in close proximity to it, there is nothing to show that she did not believe it was

on her bladder and not on another organ. She gave the names of her attending physicians and defendant could have ascertained the exact nature of her illness and treatment had it sought that information before it issued its policy. There is nothing to show that the operation was not a complete success and that she had not "fully recovered" from that illness as stated in the application.

As we have observed, defendant did not require an examination by a physician of any of its policyholders. It issued its policies upon the statements contained in the applications and in the instant case one day after the date of the application which informed defendant that the applicant had suffered an illness and had been treated by physicians within the specified period of three years. Defendant had placed at its disposal the exact source from which it could obtain the information which it now maintains was withheld from it. It did not choose to make any inquiry but issued its policy with extreme promptness, to say the least, and accepted deceased's money for six years, during all of which time defendant led her to believe she had a valid and enforceable policy of insurance on her life. Under such circumstances defendant should not be permitted to come into court after death had sealed the insured's lips and prevented her from explaining, if she could, why she did not mention an operation in 1926, when she did mention an illness and treatment by physicians which, we conclude from the evidence and proffer of proof, occurred at the same time as the operation. The illness and some treatment, though not the correct organ involved, were disclosed, and only the fact of an operation to effect a cure was withheld. As defendant made no investigation when it should and could have, and as it issued its policy of insurance, accepted Mrs. Turner's money for six years and lulled her into the secure belief that she had a valid policy of life insurance, it must be held that it waived the misstatement in the application and is now estopped from asserting the purported fraud.

Defendant bases its defense upon the further fact that in July, 1934, an application for reinstatement was filed in which it was stated that Mrs. Turner was in good health and had not consulted any physicians, when it could prove by attending physicians, if permitted, that those statements were false. The evidence shows this application was not

signed by Mrs. Turner. There is nothing to show that she knew anything about it. The record discloses that her adopted son went to the office of defendant in Fresno and was requested by an employee in charge of reinstatement to make out and sign the application, which he did in the presence of the employee and paid the premiums on the policy. Mrs. Turner was not in Fresno at that time. The statements in this application show that they relate more to the son than to Mrs. Turner.

The record shows that on the fifteenth of each month defendant mailed Mrs. Turner a death assessment notice requiring payment of a death assessment on the first of each succeeding month. On each notice was printed, ''If not paid within fifteen days from date mailed, insurance will lapse.'' The records introduced by defendant show that the death assessment was paid by Mrs. Turner on the first of the month on but four occasions. On all others it was paid and accepted on later dates and only on the one occasion was an application for reinstatement made, and, in so far as we know, Mrs. Turner knew nothing about that instance. Under these facts the defendant waived the right to forfeit the policy because the death payments were made after the dates upon which they were due and the application for reinstatement signed by the son was not necessary to continue the policy in force. (*Vinther* v. *Sunset Mutual Life Ins. Co.*, 11 Cal. App. (2d) 118 [53 Pac. (2d) 182]; *Knarston* v. *Manhattan Life Ins. Co.*, 124 Cal. 74 [56 Pac. 773]; *Bryson* v. *National Travelers Cas. Co.*, 206 Cal. 475 [274 Pac. 957].)

A further ground exists for rejecting many of defendant's contentions of fraud practiced by Mrs. Turner as it fails to appear that she knew of the ailment from which she was supposed to be suffering at the time of and prior to the issuance of the policy, except ''droppage of bladder'', which she disclosed, as well as others prior to filing the application for reinstatement. In the case of *Wills* v. *Policy Holders Life Ins. Assn.*, 12 Cal. App. (2d) 659 [55 Pac. (2d) 920], provisions similar to those in the instant case were contained in the application for insurance. The court there said: ''There is no substantial evidence to support the judgment which was rendered against the plaintiff in the present case. The burden was on the defendant to prove as a matter of defense that the statements of the insured which are con-

tained in her application were not only untrue but that she knew they were false or at least that she had reasonable cause to believe they were false. . . . The mere fact that insured first said that she was 'in good health', in the absence of evidence that she knew or believed that she was not in good health, is not such misstatement of fact or fraud as will render an insurance policy void. (*Burr* v. *Policy Holders Life Ins. Assn.*, 128 Cal. App. 563 [17 Pac. (2d) 1014] ; 4 Cooley's Briefs on Insurance, 2d ed., p. 3296, sec. 17, subd. [i].) In the Burr case above cited it is said in that regard: 'The term ''good health'' in the life insurance policy or application is comparative, and an assured is in good health unless affected with a substantial attack of illness threatening his life or with a malady which has some bearing on the general health. It does not mean perfect health; nor would it depend upon ailments slight and not serious in their natural consequences.' And in 2 Cooley's Briefs on Insurance, at page 3296, it is said with respect to the use of the term 'good health': 'If the applicant is free from apparent sensible disease, and unconscious of any derangement of important organic functions, he may truthfully say that he is in good health, although he may have some slight or temporary indisposition.' The preceding definitions of the term 'good health' are peculiarly applicable to the facts of this case, for the very next statement of the applicant is that 'so far as I know have no disease'. That statement regarding the general state of the applicant's health upon which the respondent relies does not constitute fraud nor furnish grounds upon which the obligation of the insurance company may be repudiated. In the absence of evidence to the contrary, we must assume the insured believed she was in good health at the time she signed her application for a policy.''

What we have said disposes of the question involved in this appeal as stated on the opening page of defendant's brief. Defendant argues two other questions which are not there stated. While we are probably not required to consider questions not so stated yet we will give them our attention.

■ Defendant introduced in evidence the death certificate prepared and filed after the death of Mrs. Turner. This was later stricken out on motion of plaintiff. Defendant urges this ruling as reversible error. Neither the certificate nor a summary of its contents appear in the record. As-

suming that it was admissible in evidence, and that it was error to strike it out, still we cannot hold the alleged error prejudicial because we know nothing of the contents of the document. It is incumbent on defendant to bring up a sufficient record upon which we may determine the prejudicial nature of any alleged erroneous ruling of the trial judge. As it has failed to do this the error, if any, cannot be considered as prejudicial.

The trial court gave judgment against defendant for $1500. The insurance policy had a maximum face value of that amount but contained a provision to the effect that the beneficiary should only receive the amount raised by a death assessment of one dollar on each member in good standing, but not exceeding the sum of $1500. There was no evidence introduced showing the number of members of defendant subject to the assessment, and its counsel urges that in the absence of evidence that there were fifteen hundred members in good standing, it was error to render judgment for the full amount of $1500.

It is alleged in the complaint, on information and belief, that on the date of the death of Mrs. Turner defendant had sufficient members in good standing so that at least the full sum of $1500 would have been produced if a death assessment had been levied at the rate and in the manner provided in the insurance policy. This allegation was denied in the answer for lack of information and belief, and not otherwise.

It is evident that defendant had possession of its own records, an examination of which would have disclosed the exact number of its members in good standing at the time of the death of Mrs. Turner. This information would have enabled defendant to answer the allegation of the complaint definitely. The possession of such information rendered abortive its attempt to deny the allegation for lack of information and belief. A denial upon information and belief or for lack of information and belief of an allegation in a verified complaint where the facts alleged and attempted to be denied are within the actual knowledge of a defendant, raises no issue and is in effect an admission of the truth of the allegation. (*McLellan* v. *Cocola*, 133 Cal. App. 9 [24 Pac. (2d) 200]; *Boscus* v. *Bohlig*, 173 Cal. 687 [162 Pac. 100]; *Goldwater* v. *Oltman*, 210 Cal. 408 [292 Pac. 624, 71 A. L. R.

871].) The allegation of the complaint not having been denied the trial court did not err in entering judgment for the full amount of $1500. (*Taketa* v. *Policy Holders Life Ins. Assn.*, 131 Cal. App. 551 [21 Pac. (2d) 646].)

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 25, 1936.