[Civ. No. 32513.   Second Dist., Div. One.   Apr. 18, 1968.]

JOHN J. CARLTON, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; JOSEPH H. CRAINE, Real Party in Interest.

Cushman & Grover and Melvin B. Grover for Petitioner.

No appearance for Respondent.

Harry Albert and Morris Singer for Real Party in Interest.

McCOY, J. pro tem.*—There is pending in the respondent court an action number SO C 13735, entitled Craine v. Carlton, wherein plaintiff seeks to recover damages for personal injuries sustained by him in an automobile accident on October 3, 1965. Plaintiff alleges among other things that he was a guest in defendant's automobile, that at the time of the accident defendant was "under the influence of intoxicants" and that his "faculties were substantially impaired thereby," and that by reason of said intoxication and the impairment of defendant's faculties thereby, the automobile in which they were riding was caused to run off the road into a dirt embankment, thereby causing plaintiff's injuries. The allegations with reference to defendant's intoxication are denied.

The defendant, petitioner here, seeks a writ of prohibition restraining the respondent court from enforcing certain orders made in the pending action permitting the plaintiff to inspect certain hospital records relating to his alleged intoxicated condition. We have concluded that the court exceeded its jurisdiction in making these orders and that a peremptory writ should issue enjoining their enforcement.

It is admitted that immediately following the accident defendant was taken by ambulance to the Community Hospital in Long Beach for the treatment of his own injuries. During the course of his discovery in the pending action plaintiff made a motion pursuant to section 2031 of the Code of Civil Procedure for an order permitting him to inspect and copy the records of the hospital relating to the care and treatment of defendant on October 3, 1965, the date of the accident, including but not limited to doctors' notes, orders and comments, X-rays, and laboratory tests. Defendant opposed the motion on the ground that the records sought constituted confidential communications between his doctor

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

and himself and thus were protected from discovery by the patient-physician privilege.

On October 17, 1967, the respondent court granted plaintiff's motion in part and made the following order: "IT IS ORDERED that plaintiff may inspect, copy, and/or photograph records, reports and documents at Community Hospital, Long Beach, California, including but not limited to doctor's notes, orders and comments, x-rays, and laboratory tests related to and concerning the original reception of defendant, JOHN J. CARLTON, at said hospital on or about October 3, 1965, subject to and restricting the inspection to the intoxication or intoxicated condition of defendant, JOHN J. CARLTON, and including the portions of the aforesaid hospital records as made by persons other than medical doctors in connection with the original reception and any follow-up examinations regarding the intoxication of defendant, JOHN J. CARLTON, by any medical doctors on the same date of the original reception. IT IS FURTHER ORDERED that the aforesaid inspection shall include any observations and/or tests made by medical doctors as well as any observations by any individual who are [sic] not medical doctors and shall include any type of laboratory tests which may indicate intoxication. Inspection of any hospital records other than relating to the intoxication or intoxicated condition of defendant, JOHN J. CARLTON, as ordered above, shall not be allowed or permitted, nor shall inspection be permitted of any statements made by said defendant to doctors or nurses then under supervision of doctors."

On October 30 the custodian of records of the hospital refused to open its records to plaintiff's inspection, notwithstanding the order just quoted. Thereupon plaintiff noticed a motion to be heard on November 2 for an order requiring inspection of the hospital records "under that certain order made by this Court on October 17, 1967, for failure to produce said documents for inspection, copying and/or photographing on October 30, 1967." Concurrently therewith plaintiff procured a subpoena duces tecum directed and served on the hospital pursuant to which its records were delivered to and sealed by the court pending the hearing of plaintiff's motion for enforcement of the order for inspection. Plaintiff's motion was heard on November 2, whereupon the following order was entered on the minutes of the court: "The Court orders, that the Court having heretofore made an order in this matter under date of October 17th, 1967, and by reference included within the terms of the present order, and the documents now

being before the Court after an attempted inspection at the hospital, pursuant to such order and such inspection being restricted by reason of the fact that it was then impossible for anyone person present to delineate that which was within the meaning and intent of the order without invading the privilege otherwise existing in favor of the defendant. The documents (hospital records) now being here, the Court will on or before the 8th days [sic] of December, 1967, examine the medical file presented from the hospital, pursuant to a subpoena to bring them to this court, and will then separate those matters from the medical records—those matters which the Court deems relevant to the subject matter of this action, and not otherwise privileged within the meaning of the order heretofore made, and by the same token and by necessity will have then looked at tose [sic] matters which may be relevant to the cause, but to which the privilege may adhere, for the purpose of segregating them in camera without premitting [sic] counsel for the moving party to look at that privileged matter so determined by the Court in such inspection and will then, unless previously restrained by Writ of Prohibition of other proceedings, permit counsel for the plaintiff to inspect an [sic] copy those portions of the documents which the Court then deems to be within the meaning of the order heretofore made and heretofore referred to. It is understood that both orders, the previous order and the one today will be incorporated as the subject of the proposed action by the defendant. The Court is not saying to limit it to that—it is saying to incorporate them with whatever other documentations are necessary. *On December 8th, 1967 at 11:00 A.M.*, the Court will carry out its proposed instruction unless previously restrained.''

Petitioner contends that, in making its order for inspection, the respondent court exceeded its jurisdiction, and that the court would exceed its jurisdiction if, without waiver of the patient-physician privilege by the petitioner, it examined and attempted to segregate the hospital records and determine unilaterally which portions of those records are within the privilege, and would also exceed its jurisdiction if it should take any other action to enforce the order for inspection.

Plaintiff's motion for an order permitting him to inspect the hospital records was made pursuant to section 2031 of the Code of Civil Procedure on the theory that the records were under defendant's control within the meaning of that section. So far as pertinent here, section 2031 reads: ''Upon motion of

any party showing good cause therefor . . . the court in which an action is pending may (1) order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents . . . not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by subdivision (b) of Section 2016 of this code and which are in his possession, custody, or control; . . ." Only two questions are raised by the petitioner, the one, whether the hospital records are privileged within the meaning of this section, and the other, whether the court has power to examine the hospital records in their entirety in camera and determine which parts of those records may be examined by plaintiff.

We note in passing that the records involved here are those of the hospital which is not a party to this proceeding and that it was not brought before the court at the hearing of the two motions referred to above. Since no question of procedure was raised in the trial court and none has been raised here, we do not consider or determine whether, in the circumstances of this case, a motion under section 2031 of the Code of Civil Procedure, addressed only to defendant, was the proper procedure to obtain inspection of the hospital records by the plaintiff. We assume for the purpose of this decision, but without deciding the point, that the procedure was proper. Nor do we here decide whether plaintiff made any showing of good cause for the order as required by section 2031, since that question was not raised in the trial court and has not been raised here.[1]

### The Physician-Patient Privilege

Under section 994 of the Evidence Code, the patient who is the holder of the privilege, "has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and physician if the privilege is claimed by: (a) The holder of the privilege . . ." As used

---

[1] The file of the superior court shows that the only declaration filed in support of the motion was that of plaintiff's attorney. This declaration alleges only that the physical condition of defendant will be in issue at the time of the trial, particularly in respect to the question of intoxication, that the hospital records will describe that condition, "together with other medical information which will be material and relevant to the issues in this case," that "There is no other manner for determining the facts which are contained in said hospital records," and that "it is necessary" that declarant be permitted to inspect and copy those records before trial.

in the article of the Evidence Code relating to this privilege, " 'physician' means a person authorized, or reasonably believed by the patient to be authorized, to practice medicine in any state or nation." (Evid. Code, § 990.) " '[P]atient' means a person who consults a physician or submits to an examination by a physician for the purpose of securing a diagnosis or preventive, palliative, or curative treatment of his physical or mental or emotional condition." (Evid. Code, § 991.) There can be little doubt that in the case before us the relationship of patient and physician was established as between defendant and the physicians at the hospital who undertook to examine, diagnose and furnish curative treatment from the time of his arrival at the hospital until his discharge, within the meaning of these and other sections of the Evidence Code discussed below. This brings us to a consideration of the scope of the privilege in relation to the order for inspection here under review.

As we have just noted, the privilege extends no further than "a confidential communication between patient and physician." A confidential communication is defined in section 992 of the Evidence Code which reads: "As used in this article, 'confidential communication between patient and physician' means information, including information obtained by an examination of the patient, transmitted between a patient and his physician in the course of that relationship and in confidence by a means which, so far as the patient is aware, discloses the information to no third persons other than those who are present to further the interest of the patient in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the physician is consulted, and includes a diagnosis made and the advice given by the physician in the course of that relationship." ▆ In answering the question before us we are bound by the well-settled rule that the provisions of this section, like those of former section 1881, subdivision 4 of the Code of Civil Procedure, must be liberally construed in favor of the patient. (*Turner* v. *Redwood Mut. Life Assn.*, 13 Cal.App.2d 573, 576 [57 P.2d 222], and cases there cited; *Newell* v. *Newell*, 146 Cal.App.2d 166, 177-178 [303 P.2d 839].) ▆ We must also consider that when it is claimed that the matter sought to be disclosed is a communication made in the course of the physician-patient relationship "the communication is presumed to have been made in confidence and the opponent of

the claim of privilege has the burden to establish that the communication was not confidential." (Evid. Code, § 917.)

The order here under review, quoted in full above, would permit inspection by plaintiff of all the hospital records relating to the alleged intoxicated condition of defendant, excluding "statements made by said defendant to doctors or nurses then under supervision of doctors." We have no difficulty in holding that any "doctor's notes, orders and comments," as well as the records of "any follow-up examinations regarding the intoxication of defendant, JOHN J. CARLTON, by any medical doctors," and the records of "any observations and/or tests made by medical doctors," are well within the scope of section 992 of the Evidence Code and are privileged, and that plaintiff is not entitled to inspect those records unless he has brought his case within the exception provided by section 996.

So far as relevant here, section 996 of the Evidence Code reads: "There is no privilege under this article as to a communication relevant to an issue concerning the condition of the patient if such issue has been tendered by: (a) The patient. . . ." Plaintiff contends that by his denial of the allegation in the complaint that defendant was intoxicated at the time of the accident, defendant "tendered" the issue concerning his condition which must be decided by the court at the trial of the action. We cannot agree with this contention.

The general rule is stated in section 588 of the Code of Civil Procedure which provides that "Issues arise upon the pleadings when a fact or a conclusion of law is maintained by the one party and is controverted by the other." "If facts alleged in the complaint are not controverted by the answer, they are not in issue. . . ." (*Fuentes* v. *Tucker,* 31 Cal.2d 1, 4-5 [187 P.2d 752].) "[I]ssues in a case do not arise or exist so as to require trial upon the mere filing of a complaint, but only upon joinder through appropriate denials of the averments of the complaint or through affirmative defenses or pleas deemed or required to be denied by the plaintiff, or by other defendants, as the case may be." (*Mercantile Trust Co.* v. *Superior Court,* 178 Cal. 512, 521 [174 P. 51].) Under these rules it seems clear that in an action for damages for personal injuries the issues are "tendered" by the plaintiff within the meaning of section 996 of the Evidence Code, by plaintiff's factual allegations as to such things as defendant's conduct (intoxication, etc.), and not by

290

defendant's denial of such allegations which constitutes no more than a joinder of issue. (Cf. *Schlagenhauf* v. *Holder*, 379 U.S. 104, 119-122 [13 L.Ed.2d 152, 164-166, 85 S.Ct. 234].)

Former section 1881, subdivision 4, of the Code of Civil Procedure provided that "where any person brings an action to recover damages for personal injuries, such action shall be deemed to constitute a consent by the person bringing such action that any physician who has prescribed for or treated said person and whose testimony is material in said action shall testify. . . ." The philosophy underlying this patient-litigant exception to the patient-physician privilege is stated in *City & County of San Francisco* v. *Superior Court*, 37 Cal.2d 227, 232 [231 P.2d 26, 25 A.L.R.2d 1418] : "The whole purpose of the privilege is to preclude the humiliation of the patient that might follow disclosure of his ailments. When the patient himself discloses those ailments by bringing an action in which they are in issue, there is no longer any reason for the privilege. The patient-litigant exception precludes one who has placed in issue his physical condition from invoking the privilege on the ground that disclosure of his condition would cause him humiliation. He cannot have his cake and eat it too." Section 996 of the Evidence Code is based on rule 27, subdivision (4) of the Uniform Rules of Evidence. According to that rule there is no privilege "in an action in which the condition of the patient is an element or factor of the claim or defense of the patient. . . ." It is significant here that, in submitting its recommendations for legislation on this subject, the Law Revision Commission stated "that there is no logical basis in support of the defense-of-the-patient portion of Rule 27(4)" and that the protection of the privilege should not be "withheld from the person who is the *un*willing party to the action. Therefore, it is recommended that 'or defense of the patient' be stricken from Rule 27(4)." (6 Cal.Law Revision Com. Rep., 1964, pp. 412-414.) It is apparent from the adoption of section 996 in its present form that the Legislature followed this recommendation.

We hold that the case before us does not fall within the exception relied on by plaintiff, and that defendant is entitled to the benefit of the privilege with respect to those portions of the hospital records discussed above.

*In Camera Inspection of Documents*
*to Determine Existence of Privilege*

The court's order of October 17 would also permit inspection of those portions of the hospital records "made by

persons other than medical doctors in connection with the original reception'' of defendant, and ''any observations by any individual who are [*sic*] not medical doctors,'' including ''any type of laboratory tests which may indicate intoxication.'' It is doubtful to say the least that any such records, if they exist, come within the physician-patient privilege. We cannot, however, be blind to the fact that, for want of any adequate description, the order is too vague and indefinite to permit its enforcement. This is more than evident from the court's order of November 2 granting plaintiff's motion for ''enforcement'' of the order of October 17.

By that order the court advised the parties that, unless restrained by this court, it would examine the medical file presented by the hospital in camera and ''will then separate those matters from the medical file—those matters which the Court deems relevant to the subject matter of this action, and not otherwise privileged within the meaning of the order heretofore made, and . . . permit counsel for the plaintiff to inspect and copy those portions of the documents which the Court then deems to be within the meaning of the order heretofore made.'' It is important, however, to note that the court prefaced this order with the statement that the hospital file ''was now before the Court after an attempted inspection at the hospital, pursuant to such order [for inspection] and such inspection being restricted by reason of the fact that it was then impossible for anyone person present to delineate that which was within the meaning and intent of the order without invading the privilege otherwise existing in favor of the defendant.'' We wonder, parenthetically, just how, in these circumstances, the court could make that delineation, assuming it has the power to carry out its inspection of the records as provided in the order of November 2. In any event, defendant contends that the court has no jurisdiction to do so. With that contention we agree.

Assuming that the court had jurisdiction under section 2031 of the Code of Civil Procedure to order the production of those hospital records which were not privileged for inspection by plaintiff it is arguable that before the enactment of the Evidence Code and in the absence of any controlling decisions the procedure proposed by the court in its order of November 2 would have been proper under the provisions of section 187 of the Code of Civil Procedure.[2] (*People* v. *Glen*

[2]''When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means neces-

*Arms Estate, Inc.* (1964) 230 Cal.App.2d 841, 846, note 1 [41 Cal.Rptr. 303] ; but see *Collette* v. *Sarrasin* (1920) 184 Cal. 283, 288-290 [193 P. 571].) In our opinion this door was closed at least in this case by the controlling provisions of the Evidence Code which became effective January 1, 1967.

■ It is true, of course, that when evidence is proffered at a trial, the court must "hear and determine" out of the presence of the jury the existence or nonexistence of the preliminary fact upon which its admissibility or inadmissibility depends (Evid. Code, § 402) including "the existence or nonexistence of a privilege" (Evid. Code, § 400; and see Comment—Assembly Judiciary Committee on § 405, stating that questions as to privileges under §§ 900-1070 should be decided under § 405). ■ However, in ruling on a claim of privilege the court is expressly limited by section 915 of the Evidence Code relating to the disclosure of the privileged information.

Section 915 of the Evidence Code reads: "(a) Subject to subdivision (b), the presiding officer may not require disclosure of information claimed to be privileged under this division in order to rule on the claim of privilege.[3]

"(b) When a court is ruling on a claim of privilege under Article 9 (commencing with Section 1040) of Chapter 4 (official information and identity of informer) or under Section 1060 (trade secret) and is unable to do so without requiring disclosure of the information claimed to be privileged, the court may require the person from whom disclosure is sought or the person authorized to claim the privilege, or both, to disclose the information in chambers out of the presence and hearing of all persons except the person authorized to claim the privilege and such other persons as the person authorized to claim the privilege is willing to have present. If the judge determines that the information is privileged, neither he nor any other person may ever disclose, without the consent of a

___

sary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code." (Code Civ. Proc., § 187.)

3 As used in this section " 'Presiding officer' means the person authorized to rule on a claim of privilege in the proceeding in which the claim is made" (Evid. Code, § 905), and "of course, includes the judge or other person presiding in a judicial proceeding" (Comment—Law Revision Commission on §-905).

person authorized to permit disclosure, what was disclosed in the course of the proceedings in chambers."[4]

As we read section 915, it means that a court in ruling on a claim of privilege is expressly precluded from requiring a disclosure of information claimed to be privileged unless the claim is made with respect to official information or the identity of an informer (§§ 1040 et seq.), or with respect to a trade secret (§ 1060). It follows that the respondent court would be acting in excess of its jurisdiction if it were to carry out the procedure for an in camera inspection of the hospital file as set forth in its order of November 2, 1967. In view of this conclusion the record of the hospital now in the custody of the court should be returned to the hospital.

Let a writ issue prohibiting the respondent court from taking any action to enforce its orders of October 17 and November 2, 1967, other than to vacate those orders.

Wood, P. J., concurred.

LILLIE, J.—I concur with my colleagues in their view that respondent court would be acting in excess of its jurisdiction if it were to carry out the procedure for an in camera inspection of defendant's hospital file as set forth in its order of November 2, 1967, but I dissent insofar as they conclude that

---

[4]The Comment of the Law Revision Commission on section 915 reads: "Subdivision (a) states the general rule that revelation of the information asserted to be privileged may not be compelled in order to determine whether or not it is privileged. This codifies existing law. See *Collette* v. *Sarrasin*, 184 Cal. 283, 288-289, 193 Pac. 571, 573 (1920); *People* v. *Glen Arms Estate, Inc.*, 230 Cal.App.2d 841, 846 note 1, 41 Cal.Rptr. 303, 305 note 1 (1964). Subdivision (b) provides an exception to this general rule for information claimed to be privileged under Section 1040 (official information), Section 1041 (identity of an informer), or Section 1060 (trade secret). These privileges exist only if the interest in maintaining the secrecy of the information outweighs the interest in seeing that justice is done in the particular case. In at least some cases, it will be necessary for the judge to examine the information claimed to be privileged in order to balance these competing considerations intelligently. See *People* v. *Glen Arms Estate, Inc.*, 230 Cal.App.2d 841, 846 note 1, 41 Cal.Rptr. 303, 305 note 1 (1964), and the cases cited in 8 Wigmore, Evidence § 2379 at 812 note 6 (McNaughton rev. 1961). And see *United States* v. *Reynolds*, 345 U.S. 1, 7-11 (1953) [97 L.Ed. 727, 73 S.Ct. 528, 32 A.L.R.2d 382], and pertinent discussion thereof in 8 Wigmore, Evidence § 2379 (McNaughton rev. 1961). Even in these cases, Section 915 undertakes to give adequate protection to the person claiming the privilege by providing that the information be disclosed in confidence to the judge and requiring that it be kept in confidence if it is found to be privileged. The exception in subdivision (b) applies only when a court is ruling on the claim of privilege. Thus, in view of subdivision (a), disclosure of the information cannot be required, for example, in an administrative proceeding."

defendant is entitled to the benefit of the privilege with respect to those portions of the hospital records which relate to his alleged intoxicated condition.

The privilege here asserted by defendant is predicated upon considerations precluding "the humiliation of the patient that might follow disclosure of his ailments." (*City & County of San Francisco* v. *Superior Court,* 37 Cal.2d 227, 232 [231 P.2d 26, 25 A.L.R.2d 1418].) Yet had defendant, when removed from the scene by ambulance to Community Hospital for medical care and treatment for his own injuries, been so unfortunate as to have been arrested for drunk driving by an alert law enforcement officer who requested the doctor treating, or a nurse attending him in the hospital to draw a blood sample (even without defendant's consent), the results of a blood test showing the alcoholic content in the blood would be admissible against him in a criminal prosecution (§§ 23101, 23102, Veh. Code). (*People* v. *Haeussler,* 41 Cal.2d 252, 257 [260 P.2d 8]; *People* v. *Duroncelay,* 48 Cal.2d 766, 770 [312 P.2d 690]; *Breithaupt* v. *Abram,* 352 U.S. 432 [1 L.Ed.2d 448, 77 S.Ct. 401]; *Schmerber* v. *California,* 384 U.S. 757 [16 L.Ed.2d 908, 86 S.Ct. 1826].) The rationale of these cases is found in *People* v. *Duroncelay,* 48 Cal.2d 766, at page 772 [312 P.2d 690]: "The incidence of death and serious injury on the highways has undeniably assumed tragic dimensions and has been due in a significant degree to the effects of alcohol upon drivers. (See National Safety Council Accident Facts—1955, pp. 43-71.) So long as the measures adopted do not amount to a substantial invasion of individual rights, society must not be prevented from seeking to combat this hazard to the safety of the public. The extraction of blood for testing purposes is, of course, an experience which, every day, many undergo without hardship or ill effects. When this fact, together with the scientific reliability of blood alcohol tests in establishing guilt or innocence, is considered in the light of the imperative public interest involved, the taking of a sample for such a test without consent cannot be regarded as an unreasonable search and seizure where, as here, the extraction is made in a medically approved manner and is incident to the lawful arrest of one who is reasonably believed to have violated section 501 of the Vehicle Code." Thus, the obtaining and use of such evidence in criminal cases has been held to be justified by the "imperative public interest" in combating the serious "incidence of death and serious injury" caused by intoxication on our highways which is a "hazard to the safety of the public."

While it is true that the privilege here claimed is wholly unavailing to a defendant in a criminal proceeding (Evid. Code, § 998; *People* v. *Dutton,* 62 Cal.App.2d 862, 864 [145 P.2d 676]; *People* v. *West,* 106 Cal. 89, 91 [39 P. 207]; *People* v. *Combes,* 56 Cal.2d 135, 149 [14 Cal.Rptr. 4, 363 P.2d 4]) and the distinction between the applicability of the privilege in civil and criminal cases has been sanctioned (although it is · being modified—see additional specified exceptions to the physician-patient privilege in sections 997, 999, Evidence Code), it is my view that the right of recovery by the innocent victim against the intoxicated driver in a civil action for damages is entitled to as much protection as the generic "public," of whom he is a specific member-victim, on whose benefit the criminal rule is based. The innocent injured guest can recover in a civil action for damages against the driver only if he pleads and proves intoxication or wilful misconduct on the driver's part. (§ 17158, Veh. Code.) His right to present such evidence on the issue of intoxication, as is permitted to the public in criminal cases, should be protected as much as the right of the public. There is here involved the balancing of rights, i.e., the injured guest's right to present evidence of the driver's intoxication as against the driver's right to invoke the physician-patient privilege from disclosure of his "ailments." To my mind intoxication is not the kind of "ailment" with which the rationale of the application of the privilege (see *City & County of San Francisco* v. *Superior Court,* 37 Cal.2d 227, 232 [231 P.2d 26, 25 A.L.R.2d 1418]) is concerned, but is the same condition (self-indulged and personally caused), which constitutes the serious menace to the public and results in serious injuries to its members, that has been held to be the basis for the criminal rule hereinabove noted. Further, there is as much, if not more, "humiliation" caused by disclosure of intoxication in a criminal case as in a civil action. Moreover, the intoxicated driver, charged with felony drunk driving, faced with the results of a blood test administered with blood taken by the doctor treating him, might well plead guilty; such plea, as an admission, could be used against the driver in a subsequent civil action brought by the injured guest based upon his intoxication. Yet in the absence of arrest, if the injured guest sues the driver in a civil action for damages for personal injuries caused by his intoxication, he cannot use evidence thereof revealed to or observed by the doctor treating the driver for his injuries. The same intoxication of the same driver proximately causing·

.

the same injuries to the same guest may well be both a crime and a tort. The effect of the majority opinion is that if the intoxicated driver is prosecuted in a criminal proceeding, the privilege is not available to him but if he is sued by his victim for personal injuries it is available.

It is inconceivable to me that justice can be obstructed by such patently arbitrary, fictitious and unrealistic reasoning and distinction. It is my view in this day of extensive trial discovery and enlightened reappraisal of various rules and doctrines that, applied to the facts of this case,[1] the construction which my colleagues have placed on the subject statute does not best serve the interests of truth and justice. I would permit plaintiff to inspect the hospital records relating to defendant's alleged intoxication.

A petition for rehearing was denied May 15, 1968 and the following opinion was then rendered:

McCOY, J. pro tem.*—The opinion of the court filed herein April 18, 1968, is limited to a consideration of two very specific questions: (1) whether, in an action for damages for personal injuries suffered by the plaintiff in an automobile accident when he was admittedly a guest of the defendant driver, the hospital records of the defendant insofar as they may show that the defendant was "under the influence of intoxicants" at the time of his arrival at the hospital by ambulance shortly after the accident, are privileged within the meaning of the physician-patient privilege, and thus not subject to examination by the plaintiff; and (2) whether the trial court, having granted plaintiff's motion for an order requiring defendant to make such records available to plaintiff for his inspection, may examine the hospital records in their entirety in camera to determine what part of those records may come within the scope of the order for inspection as showing that defendant was "under the influence of intoxicants" at the time of his arrival at the hospital.

At the trial of this action plaintiff must, of course, establish by competent evidence that, at the time of the accident, defendant was under the influence of intoxicants and that his

---

[1]This is not to be understood as sanctioning orders for such inspection routinely in automobile accident cases in which a general charge of negligence is lodged.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

faculties were substantially impaired thereby, as alleged in his complaint. Admittedly this may be more difficult since a physical examination of defendant at any time after his release from the hospital would have served no useful purpose. It should be emphasized, however, that nothing we have said in our opinion is intended to restrict plaintiff's right to all proper discovery before trial as to all relevant facts and documents which are not privileged or as to the identity of all persons having knowledge of all relevant facts. Nothing in our opinion is intended to restrict his right to take the deposition of the custodian of the hospital records and, subject to any proper objections, ascertain from him what documents there may be in those records, including the reports of any blood tests, which are not privileged and which relate to defendant's condition, as a preliminary step toward further proceedings for pretrial inspection of those particular documents or as a basis for the issuance of a subpoena duces tecum for their production at the time of trial. On the taking of such deposition he can also ascertain, subject to any proper objections, the identity and location of any persons, as shown by the hospital records, who may have knowledge of any facts relating to defendant's condition at the time of his arrival at the hospital, in order that he may interview or take the depositions of any such persons or procure subpoenas requiring their attendance at the trial. Much time would have been saved for all concerned if plaintiff had chosen to follow this course in the first instance.

We find nothing in *Harabedian* v. *Superior Court,* 195 Cal. App.2d 26 [15 Cal.Rptr. 420, 89 A.L.R.2d 994], or in *Schlagenhauf* v. *Holder,* 379 U.S. 104 [13 L.Ed.2d 152, 85 S.Ct. 234], which causes us to alter the conclusions reached in our opinion. The precise questions considered and decided by us were not before the court in either of those cases.

The petition for rehearing is denied.

Wood, P. J., concurred.

LILLIE, J.—I would grant the petition for rehearing for the reasons stated in my dissenting opinion.

The petition of the real party in interest for a hearing by the Supreme Court was denied June 11, 1968.