PEOPLE *v.* TOMCZAK.

1. WITNESSES—MENTAL COMPETENCY.
   In prosecution for keeping bawdy house, testimony of girls in their teens, who were neither insane, imbeciles, nor idiots, although they had been adjudged feeble minded by probate court, was properly admitted without preliminary examination to determine whether they possessed mental capacity to comprehend obligation of oath, where their testimony disclosed that they fully comprehended questions and made direct answers thereto.

2. CRIMINAL LAW—JUROR MAY NOT IMPEACH VERDICT.
   Juror may not by affidavit impeach his own verdict.

3. SAME—TRIAL—MISCONDUCT OF JUDGE.
   Remarks by trial judge, facetious and otherwise, tending to belittle counsel and the defense in prosecution for keeping bawdy house, constituted reversible error, although counsel for defense were not blameless.

4. SAME—IMPEACHMENT OF WITNESS—PROSTITUTES.
   Witness for defendant prosecuted for keeping bawdy house, who testified that no acts of prostitution occurred while she worked for defendant and lived at her home, could not be impeached by testimony of witness for prosecution that former witness had reputation of being common prostitute, but said testimony could be considered upon subject of character of house in which she lived.

5. SAME—EVIDENCE—HEARSAY.
   Testimony of woman police officer, in prosecution for keeping bawdy house, that she knew the reputation of defendant's house, and it was of ill fame, was not objectionable as hearsay.

Error to Wayne; Hunt (Ormond F.), J. Submitted April 17, 1930. (Docket No. 135, Calendar No. 34,354.) Decided June 2, 1930.

Josephine Tomczak was convicted of keeping a bawdy house. Reversed.

On right to inquire of witness as to keeping of disorderly house for the purpose of impeachment, see annotation in 1 A. L. R. 1402.

*McClear & Toy* (*Thomas A. Kenny* and *John T. Canniff*, of counsel), for appellant.

*Wilber M. Brucker,* Attorney General, *James E. Chenot,* Prosecuting Attorney, and *Lloyd A. Loomis,* Assistant Prosecuting Attorney, for the people.

Wiest, C. J.  Defendant was convicted of keeping an ill fame and bawdy house, resorted to for purposes of prostitution and lewdness.  Review is by writ of error.

Defendant was not entitled to a directed verdict, nor is she entitled now to a holding that the verdict is against the great weight of evidence.

Two girls, in their teens, witnesses in behalf of the people, had been adjudged feeble minded, by the probate court for the county of Wayne, and committed to a detention institution.  Error is assigned upon admission of their testimony without a preliminary investigation by the court to determine whether they possessed mental capacity to comprehend the obligation of an oath and understandingly give testimony.  Such a preliminary examination was not required.  The girls were not insane, imbeciles, nor idiots.  Their testimony discloses that they fully comprehended questions and made direct answers thereto.  In support of a motion for a new trial, one of the jurors made an affidavit that, while considering the verdict, the officer in charge asked him as to how the votes stood, and was told 11 to 1 for conviction, and that he was the one holding out for a verdict of not guilty, and was informed by the officer that:

"He was very foolish to hold out for the defendant.  That he had known the judge, in like circumstances, to give jurymen a terrible 'bawling out'·

and bar them from further jury service for the rest of their lives. * * * That your deponent did not believe, at the time that he was deliberating upon the verdict, nor does he now believe, that the defendant, Josephine Tomczak, was guilty of the act charged * * *. That your deponent voted for a conviction solely because of the fact that Officer Dickinson coerced him to do so."

The court officer, by affidavit, denied the allegation. The court also took proofs. The circuit judge accepted the denial of the officer and applied the well-established rule that no juror may impeach his verdict.

Prejudicial error is assigned upon many remarks, facetious and otherwise, made by the judge in the course of the trial. We quote but a few. The prosecutor asked a witness:

"*Q*. What was their conduct—conduct of these girls and the men just prior to the time that those girls took those men into the room? Was there anything said, did you ever hear any conversation between the girls and the men that they took into the bedrooms?

"*A*. The girls would say, fellows would say to the girls, ask them how much did they charge.

"*Mr. Weideman:* Object to that unless she said what girl said to what man. Let him fix the time so we can meet this testimony.

"*The Court:* You will not meet it.

"*Mr. Weideman:* How does your honor know?

"*The Court:* I am guessing from past experience."

Counsel for defendant, during the examination of a witness by the prosecutor, said:

"*Mr. Willard:* Wait a minute. Your honor, I think that is going too far.

*"The Court:* It hurts now.

*"Mr. Weideman:* I object to the remark of your honor in the record 'It hurts.' Take an exception.

*"The Court:* I am perfectly willing you should have an exception.

*"Mr. Weideman:* Your honor, here is a case that should not be laughed out of court.

*"The Court:* No, I am going to stick clear to the end.

*"Mr. Weideman:* This lady's liberties are at stake.

*"The Court:* You are not telling me anything; I knew that before.

*"Mr. Weideman:* Your honor is laughing us out of court.

*"The Court:* No, I am serious, very serious.

*"Mr. Weideman:* It don't appear so. I am making a record.

*"The Court:* He is taking it down."

In arguing a point of law the court asked counsel if he had a case on the subject, was informed that he had not, and stated:

"I know your honor knows I just got into this case.

*"The Court:* I thought you were in this case before. Didn't you tell me you were bought and paid for?

*"Mr. Willard:* No, your honor.

*"Mr. Weideman:* I am not bought and paid for yet.

*"The Court:* Oh, you ought to go to your private office; do not waste your time unless you are paid.

*"Mr. Weideman:* Charity.

*"The Court:* Charity has gone. Overruled. Answer the question."

It is no answer to the errors assigned to say that the trial judge and counsel for the prisoner engaged

in a side trial of wit. Such a contest, with no check upon the judge, and fear of contempt on the part of counsel, is too unequal to even appeal to a spirit of sport, and, of more importance, has no place in a court of justice. The prisoner has a right to a trial, conducted with the dignity befitting a court of record. Counsel for defendant cannot be held blameless, for, instead of humoring the judge by counter remarks, they should have been content with entering exceptions. In the battle indulged the prisoner was a mere bystander, and, as sometimes happens, as a mere looker-on she was hit by stray shots. This woman was entitled to a trial, accompanied by an earnest effort to ascertain the truth of the charge laid against her, and unaccompanied by remarks from the bench tending to belittle counsel and the defense. We are constrained to hold that the remarks of the trial judge constituted reversible error.

A witness for the defense testified that she had worked for defendant and lived at her home and no acts of prostitution occurred while she was there. A witness for the prosecution was then permitted to testify that the former witness had the reputation of being a common prostitute. It is claimed that a witness cannot be so impeached. The point is well taken if limited to impeachment, but without merit when considered upon the subject of the character of the house in which she lived.

A woman police officer testified that she knew the reputation of defendant's house, and it was of ill fame. The testimony of this witness went beyond that of mere hearsay, and, therefore, not subject to exclusion under the rule stated in *People* v. *Pinkerton,* 79 Mich. 110.

The judgment is reversed, a new trial ordered, and defendant remanded to the custody of the sheriff for the county of Wayne to await such trial.

BUTZEL, CLARK, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.