107 N.J. Super. 121 (1969)
257 A.2d 134
CATHERINE UNICK, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF JOAN D. UNICK AND CATHERINE UNICK, GENERAL ADMINISTRATRIX OF THE ESTATE OF JOAN D. UNICK, PLAINTIFF,
v.
KESSLER MEMORIAL HOSPITAL, SALVATORE A. PENNISI, M.D. AND HOWARD L. KENT, M.D., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided September 29, 1969.
*122 Mr. Carl Valore, Jr. for plaintiffs (Messrs. Miller, Brone, Valore & McAllister, attorneys).
Mr. Robert E. Steedle for defendant Kessler Memorial Hospital (Messrs. Lloyd, Megargee & Steedle, attorneys).
Mr. Burchard V. Martin for defendant Dr. Kent (Messrs. Taylor, Bischoff, Neutze & Williams, attorneys).
Mr. James W. Taylor, attorney for defendant Dr. Pennisi.
RIMM, J.C.C. (temporarily assigned).
This is (1) a motion by plaintiff to compel defendant Dr. Howard L. Kent, (Kent) to answer two of plaintiff's interrogatories, and (2) an application to compel defendant Kessler Memorial Hospital (Kessler) to produce its operating room schedule and record book for September 14, 1966.
The interrogatories propounded by plaintiffs addressed to Kent, and here in issue, are as follows:
74. Have you ever been a party to any lawsuit other than the present one?
ANSWER: Refused to answer without order of court.
75. If the answer to the preceding Interrogatory is in the affirmative, state: (a) the name of the parties to such suit, (b) your status therein, (c) the court in which it was filed.
ANSWER: [left blank]
*123 If Kent is ordered to answer No. 74, then it follows that No. 75 must also be answered.
Plaintiffs contend that decedent came under the care of Kent and Dr. Salvatore A. Pennisi (Pennisi) at Kessler on September 12, 1966. Two days later the infant female decedent was administered anesthesia by Kent in connection with a cystoscopy and catheterization were being performed by Pennisi at Kessler. When the procedure was completed decedent became cyanotic and her vital signs diminished. Resuscitation was undertaken with success, but decedent died on September 19, 1966 as a result of cardiac arrest under anesthesia for retrograde pyelography. Kent is charged generally with negligence and malpractice in that he failed to exercise care in the choice of an anesthetic agent and care in the administration of the anesthesia which proximately caused the death; and negligence for failure to exercise proper care. Pennisi performed the procedures in the operating room of Kessler, and allegations relating to Pennisi's negligence are not pertinent to this issue.
The question to be resolved is whether the information sought by plaintiffs may be withheld by Kent by virtue of it being a confidential communication because of the patient-physician privilege under to N.J.S.A. 2A:84A-22.1 and 22.2.
In the absence of the benefit of the statutory privilege there would be no basis for withholding the requested information at the discovery stage of the proceedings. Myers v. St. Francis Hospital, 91 N.J. Super 377 (App. Div. 1966). Hague v. Williams, 37 N.J. 328, 334-335 (1962). The answer to interrogatory No. 75 would necessarily disclose to plaintiffs the names and addresses of patients of Kent who are not parties to this action and have no interest in this litigation.
In Osterman v. Ehrenworth, 106 N.J. Super. 515, 521 (Law Div. 1969), the court held that the "statute [physician-patient privilege] reflects a legislative determination that the policy behind the patient-physician privilege is of greater weight than the evidence it makes unavailable." However, the *124 court held that none of the statutory exemptions from the privilege were applicable to that case. The statutory exemption which would apply here, N.J.S.A. 2A:84A-22.7, provides that
A privilege under this act as to a communication is terminated if the judge finds that any person while a holder of the privilege has caused the physician or any agent or servant of the physician to testify in any action to any matter of which the physician or his agent or servant gained knowledge through the communication.
The interrogatory seeks the names of parties "to such suit" (prior litigation against Kent), and the disclosure of such information would not be improper in "such suit" if the parties testified to physical conditions. The requested information is not directed to any person involved in the present litigation, and if in the prior litigation the physician-patient privilege had been waived, Kent cannot invoke the privilege here to avoid answering this interrogatory. Only names of parties are sought and not any information relating to illness or treatment of a patient.
Under N.J.S.A. 2A:84A-22.7 the burden of determining whether the privilege has been waived is a matter for the judge. He must, therefore, be furnished with sufficient information as to prior proceedings involving Kent to be able to make a knowledgeable determination. This can only be determined by the trial judge.
R. 4:17-1 states that interrogatories to parties are permitted "relating to any matters which can be inquired into under R. 4:10-2." R. 4:10-2 permits a deponent to "be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, * * *." This rule further provides that "It is not ground for objection that the testimony will be inadmissible at trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence * * *." Therefore, if the information sought could be admissible at trial, and reasonably calculated to lead to the discovery of admissible *125 evidence, the interrogatories would be proper. Myers v. St. Francis Hospital, supra; R. 4:10-2 supra. Moreover, the testimony may also be relevant for attacking the credibility of a witness at trial. Rules of Evidence 20.
Plaintiffs' brief argues that they are entitled to the answers to obtain "a doctor's past record of malpractice litigation," and further, that "past conduct may very well be relevant to the subject matter in the present controversy." Kent will not violate the statutory patient-physician privilege, relating to previous malpractice suits against him by answering plaintiff's interrogatories Nos. 74 and 75.
In connection with the request for the operating room schedule and record book of Kessler, this information would involve producing records relating only partly to decedent and defendants. Likewise, these records would contain information regarding other persons and perhaps defendants not parties to this litigation. Persons treated at Kessler on September 14, 1966 have not waived the physician-patient privilege. It is not necessary that such persons specifically and individually each claim such privilege. In Osterman v. Ehrenworth, supra., at pp. 521-522, the court said that "although the affected patients of the defendants, who are the `holders of the privilege' N.J.S. 2A:84A-22.1, are not parties to this litigation and not present to object, the defendant-physician has the right to assert the claim. N.J.S. 2A:84A-22.2(c) (ii). This right and duty of a defendant-physician is generally recognized."
While hospital records are not specifically mentioned in the privilege statute which is under consideration here, it is apparent that these records are encompassed by the privilege created by the statute. As defined by N.J.S.A. 2A:84A-22.1 (d), a
`confidential communication between physician and patient' means such information transmitted between physician and patient, including information obtained by an examination of the patient, as is transmitted in confidence and by a means which, so far as the patient is aware, discloses the information to no third persons other than those *126 reasonably necessary for the transmission of the information or the accomplishment of the purpose for which it is transmitted.
The recording of confidential communications between physician and patient in official hospital records in no way diminishes the confidential nature of the communications. To find that the written hospital records sought by plaintiffs are not covered by the privilege, as an oral communication would plainly be, would be to frustrate the intent of the Legislature in enacting a physician-patient privilege in the first instance.
The broad sweep of the statutory language clearly indicates that the Legislature was aware of the need to encompass in the physician-patient privilege not only communications between the doctor and the patient but also communications to others who are, in the words of the statute, "reasonably necessary for the transmission of the information or the accomplishment of the purpose for which it is transmitted." Merely because it is necessary to reduce the protected communications to writing in order to facilitate transmission of the information or accomplishment of the purpose does not remove the protection. The information in the hospital reports made by doctors or others in the hospital, and the treating physician, is protected from disclosure by the cloak of the statute allowing the privilege to the patient.
The date of the alleged malpractice was September 14, 1966, and decedent died on September 19, 1966. As of those dates only the common law privilege between physician and patient was in effect in New Jersey. The statutory privileges and exemptions became effective on July 10, 1968. Thus, the communications here involved might be governed by the common law, rather than the statutory privilege. If the common law, rather than the statutory privilege, is applicable here, Kessler would not have the right to refuse to produce the operating room schedule and record book which it need not produce under the statutory privilege.
*127 The statutory privilege which is sought to be invoked here is a rule of evidence having been incorporated into the Rules of Evidence as Rule 26A-2. Although research has disclosed no New Jersey case on point, the general rule of other jurisdictions has been that rules of evidence are at all times subject to modification by the Legislature, and a statute relating to such rule constitutes an exception to the general rule against retroactive construction. 82 C.J.S. Statutes § 424 and cases cited therein. Kessler may, therefore, invoke the statutory claim of privilege although such statutory claim did not become available until after the communications sought to be protected. The privilege thus granted by the statute may be claimed by Kessler to avoid having to produce the operating room schedule and record book sought by plaintiffs.
Kent, shall answer interrogatories Nos. 74 and 75 submitted by plaintiffs, but only as to previous malpractice actions. The motion to compel Kessler to produce its operating room schedule and record book for September 14, 1966 is denied.