PEOPLE *v.* LAPSLEY

1. WITNESSES—CREDIBILITY OF WITNESSES—NON-JURY TRIAL.
   The credibility of the witnesses is a matter for the trial judge when sitting without a jury in a criminal case.

2. CRIMINAL LAW—APPEAL AND ERROR—NON-JURY TRIAL—FINDING OF GUILT.
   Finding of guilt by a trial judge, sitting without a jury in a criminal case, will not be disturbed upon appeal unless the appellate court is satisfied that the guilt of the accused was not established beyond a reasonable doubt.

3. CRIMINAL LAW—BLOOD TYPES—EVIDENCE.
   The trial court sitting without a jury in a criminal case, did not clearly err in finding that a small amount of blood found at the place of the alleged crime was of the same type as that of the child who allegedly had been beaten, where a chemist testified that because of the minute quantity of blood found he was unable to run all applicable tests on the blood so as to determine with certainty what type it was, although he indicated that the tests did point toward a conclusion that the blood was of the same type as that of the child.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Witnesses § 868.
   Credibility of witnesses giving uncontradicted testimony as matter for court or jury. 62 ALR2d 1191.
[2] 5 Am Jur 2d, Appeal and Error §§ 839–845.
[3] 29 Am Jur 2d, Evidence §§ 370, 830.
   Blood grouping tests. 46 ALR2d 1000.
[4] 58 Am Jur, Witnesses § 553 *et seq.*
[5] 30 Am Jur 2d, Evidence § 738 *et seq.*
[6] 58 Am Jur, Witnesses § 401 *et seq.*
   When testimony by patient deemed to waive physician-patient privilege. 114 ALR 798.
[6, 7] Physician-patient privilege: testimony as to communications or observations as to mental condition of patient treated for other condition. 100 ALR2d 648.
[7] 58 Am Jur, Witnesses § 401 *et seq.*

4. WITNESSES—WAITING TOGETHER—DISCUSSION AMONG WITNESSES.

Permitting the prosecution's young female witnesses to wait together in chambers until they were called to testify was not reversible error where the mentally retarded witnesses were under the care of medical personnel and defendant's counsel was given the opportunity to examine the attendants who were looking after the children to ascertain to what extent, if any at all, the case had been discussed among the children.

5. CRIMINAL LAW—EVIDENCE—EXCLUSION—ADMINISTRATIVE HEARING—TRANSCRIPT—FINDINGS—WITNESSES.

Exclusion from evidence in a child torturing case of the transcript and hearing officer's report in a civil service hearing dealing with the defendant's dismissal from her job because of the same alleged beating of the child was harmless error, if error at all, since the trial judge could not have been bound to accept the findings of the hearing officer and all the witnesses who testified at the administrative hearing also testified in the criminal proceeding (MCLA § 750.136a).

6. WITNESSES—COMPETENCY—HOSPITAL RECORDS—PRIVILEGE.

The trial judge properly refused to admit into evidence hospital records tending to show that the prosecution witnesses were mentally incompetent to testify where the witnesses had not waived the physician-patient privilege and the records were not to be used as rebuttal proof (MCLA § 600.2157).

7. PHYSICIANS AND SURGEONS—PRIVILEGE—HOSPITAL RECORDS.

The physician-patient privilege extends to the medical records of a public mental institution (MCLA § 600.2157).

Appeal from Wayne, Theodore R. Bohn, J. Submitted Division 1 December 5, 1969, at Detroit. (Docket No. 4,999.) Decided September 28, 1970.

Ernestine Marie Lapsley was convicted of torturing a child. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Angelo A. Pentolino,* Assistant Prosecuting Attorney, for the people.

*Zwerdling, Miller, Klimist & Maurer (Norton J. Cohen,* of counsel) for defendant.

Before: R. B. Burns, P. J., and Holbrook and V. J. Brennan, JJ.

V. J. Brennan, J. On November 19, 1966, Deborah Williams, a 14-year-old patient at the Plymouth State Home and Training School, was severely beaten. Defendant, an employee at the training school, was charged with the crime of torturing a child. MCLA § 750.136a (Stat Ann 1962 Rev § 28-.331[1]). Defendant waived a jury trial and was convicted by the trial court on September 28, 1967.

The first issue to be determined is whether there is sufficient evidence to sustain the conviction. Two female patients, Martha Little and Helen Olivia, testified that they saw defendant strike Deborah with a hairbrush. Another girl, Pat Schornack, said she saw defendant lead Deborah into a room and shortly thereafter heard Deborah's screams.[1]

It is clear that there was sufficient evidence for the trial court's finding that defendant led Deborah into the room on the date in question and there administered the beating. While several of defendant's coworkers testified that Deborah had appeared unharmed when they saw her later in the evening of November 19, 1966, the trial court chose to believe

---

[1] A fourth patient, Gwendolyn Mills, testified that she also saw the beating but her testimony was so confused that the trial court specifically disregarded her testimony.

the patients. The credibility of the witnesses is a matter for the trial judge when sitting without a jury and the finding of guilt by a trial judge in a criminal case will not be disturbed upon appeal unless the appellate court is satisfied that the guilt of the accused was not established beyond a reasonable doubt. *People* v. *Geddes* (1942), 301 Mich 258, 261.

Furthermore, the trial court did not clearly err, as defendant contends, in its finding that a small amount of blood found in the room was of the same blood type as Deborah's. A chemist testified that because of the minute quantity of blood he was unable to run all applicable tests on the blood so as to determine with certainty that it was type "O", Deborah's type. However, he did indicate that the tests which were conducted on the sample pointed towards a conclusion that the blood was type "O".

Defendant also seeks reversal on the grounds that the trial judge permitted the prosecution's young female witnesses to wait in his chambers until they were called to testify. This is certainly not a practice to be encouraged. But, in the instant case, defendant's counsel was given the opportunity to examine the attendants who were looking after the children to ascertain to what extent, if any at all, the case had been discussed among the children. Furthermore, since these children were mentally retarded and were under the care of medical personnel, the trial court was faced with a unique problem. As such, we fail to find reversible error under these circumstances.

Defendant raises another question as to whether the trial court erred by refusing to admit the training school's records concerning beatings of patients there within five years previous to the day of the crime. Such irrelevant evidence was properly ex-

cluded by the trial court. *People* v. *Nichols* (1954), 341 Mich 311.

Defendant also assigns as error the trial court's exclusion of the transcript of a civil service hearing and the favorable report of the hearing officer. The hearing pertained to defendant's dismissal from her job because of the incident. Inasmuch as the witnesses who gave testimony at the civil administrative hearing later appeared and testified at the trial and since the trial judge could not have been bound in this criminal prosecution to accept the findings of the officer, the error, if any, in excluding this evidence is harmless.

Defendant's final assignment of error is that the trial court erroneously refused to admit into evidence various hospital records which tended to show that the prosecution's witnesses who implicated defendant in the crime were mentally incompetent.[2]

Physician-patient communications are privileged by statute. MCLA § 600.2157 (Stat Ann 1962 Rev § 27A.2157). It reads in part:

"No person duly authorized to practice medicine or surgery shall be allowed to disclose any information which he may have acquired in attending any patient in his professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon."

Defendant relies upon *People* v. *Hunter* (1965), 374 Mich 129, which seems to be the latest case dealing with the privilege in criminal proceedings. The

[2] The record shows that the trial court was aware that the girls were mentally retarded. But a mentally disturbed witness is not, by that fact alone, incompetent to testify. *Mead* v. *Harris* (1894), 101 Mich 585. Before allowing each of the girls to testify, the trial judge examined each as to her mental competency. Even this preliminary inquiry may not have been necessary. *People* v. *Tomczak* (1930), 250 Mich 679.

Court held in that decision that introduction by the prosecution of medical testimony relating to one of its witnesses, the prosecutrix in a statutory rape case, waived the privilege and neither the witness nor the prosecution may raise the privilege to exclude similar rebuttal proof. In the instant case, however, the records sought to be introduced were not rebuttal proof and we find that there was no waiver of the privilege by the witnesses.[3]

The privilege extends to the medical records of a public mental institution. *Massachusetts Mutual Life Insurance Co.* v. *Board of Trustees of Michigan Asylum for the Insane* (1913), 178 Mich 193. The trial court properly ruled that the privileged medical data was inadmissible for the purposes of determining the witness's competency to testify.

Affirmed.

All concurred.

_____

[3] A similar result obtained in *People* v. *Kayne* (1934), 268 Mich 186. There it was held that a prosecution witness who testified as to various medical facts waived the privilege as to rebuttal evidence. In the present case, however, the girls testified to no operative, significant medical data.