520 P.2d 518

**TUCSON MEDICAL CENTER INCORPO-RATED, a corporation, Petitioner,**

v.

**Eugene P. ROWLES et al., Respondents,**
and
**The Honorable Lee Garrett, Judge of the Superior Court of the State of Arizona, in and for the County of Pima, Division II thereof.**

**No. 2 CA–CIV 1591.**

Court of Appeals of Arizona,
Division 2.

March 29, 1974.

Rehearing Denied April 25, 1974.

Chandler, Tullar, Udall & Richmond, Holesapple, Conner, Jones, McFall & John-

son, by G. Marshall Jones, Tucson, for petitioner.

Miller, Pitt & Feldman, P. C. by Stanley G. Feldman, Tucson, for respondents Rowles and Garrett.

## OPINION

HATHAWAY, Chief Judge.

Petitioner Tucson Medical Center, Inc. (hereinafter referred to as TMC) has brought this special action requesting us to vacate a superior court order granting respondents'-plaintiffs' "Motion for Order Compelling Discovery." We assume jurisdiction.

Plaintiffs Eugene P. Rowles, Marie P. Rowles and Eugene Thomas Rowles sued TMC on the theory that it was negligent during an emergency situation just prior to the delivery of Mrs. Rowles' baby. Mrs. Rowles had some serious childbirth complications before her obstetrician arrived at the hospital. Plaintiffs seek to show that TMC had a duty to contact another obstetrician who was on the premises at the time of the emergency. They are informed that Dr. David J. Trisler was in the hospital at or about the time of the emergency in connection with the delivery of a baby born to a woman to whom we will refer as Jane Doe. In order to ascertain the exact movements of Dr. Trisler on the date in question, plaintiffs seek to inspect the medical records of Jane Doe.

On June 21, 1973, one of plaintiffs' attorneys deposed Richard H. Ross, the custodian of records of TMC who had brought the medical records of Jane Doe pursuant to a subpoena duces tecum. He answered certain questions, but on advice of counsel refused to allow plaintiffs' counsel to inspect the records.

TMC alleges that the physician-patient privilege applies to certain data contained in the subject records, that Dr. Trisler would be prohibited by A.R.S. § 12–2235 from testifying as to this data, and that TMC, as the custodian of these records, is therefore under a duty not to disclose this information. TMC also contends that since information relating to the location of Dr. Trisler during the emergency would not be privileged as a "communication" from patient to physician under A.R.S. § 12–2235, such information could be discovered by interrogatories or deposition without the necessity of an inspection of the records.

Plaintiffs-respondents assert that there is no privilege for hospital records, that a hospital has no standing to assert the physician-patient privilege, that in any case the hospital has waived the privilege by Mr. Ross' testimony on deposition as to certain portions of the records, and that TMC has made no showing that any part of the hospital record is privileged.

The question of privilege is determinative in this instance since privileged matter is not discoverable. A.R.C.P. Rule 26(b)(1), 16 A.R.S.; Dean v. Superior Court, 84 Ariz. 104, 324 P.2d 764 (1958).

A.R.S. § 12–2235 provides as follows:

"In a civil action a physician or surgeon shall not, without the consent of his patient, be examined as to any communication made by his patient with reference to any physical or supposed physical disease or any knowledge obtained by personal examination of the patient."

Thus, our legislature has determined that the public good is best served by rendering communications made by patients to their physicians privileged. Lewin v. Jackson, 108 Ariz. 27, 492 P.2d 406 (1972). The purpose behind this legislative grant of privacy is to insure that "the patient will receive the best medical treatment by encouraging full and frank disclosure of medical history and symptoms by a patient to his doctor." Lewin v. Jackson, supra, 108 Ariz. at 31, 492 P.2d at 410. The privilege protects the entire relationship which includes the physician's advice, diagnosis, and instruction. Udall, Arizona Law of Evidence, § 93 (1960).

Our first consideration is whether hospital records fall within this privilege. In 8 J. Wigmore, Evidence § 2382 (Mc-

Naughten rev'd ed. 1961), the author states, "The privilege is universally agreed to include the physician's entries in medical records of a *hospital.*" (Emphasis in orig.) There is a total absence of any authority to the contrary dispite the fact that the statutory physician-patient privilege provisions of most jurisdictions are similar to A.R.S. § 12–2235 in that they contain no specific reference to hospital records. In State ex rel. Benoit v. Randall, 431 S.W.2d 107 (Mo.1968), the Supreme Court of Missouri reasoned as follows:

"This is undoubtedly the rule as announced by all the authorities, and, that being so, it seems that it must follow as a natural sequence that when the physician subsequently copies that privileged communication upon the record of the hospital, it still remains privileged. If that is not true, then the law which prevents the hospital physician from testifying to such matters could be violated both in letter and spirit, and the statute nullified, by the physician copying into the record all the information acquired by him from his patient, and then offer or permit the record to be offered in evidence containing the diagnosis, and thereby accomplish, by indirection, that which is expressly prohibited in a direct manner." 431 S.W.2d at 109 (citations omitted)

In Sims v. Charlotte Liberty Mutual Insurance Co., 257 N.C. 32, 125 S.E.2d 326 (1962), the Supreme Court of North Carolina stated:

"We have not heretofore had occasion to apply the statute [G.S. § 8–53, creating physician-patient privilege] in a hospital records case. Frankly we perceive no difference in the application of the statute between examination and treatment of the patient by a physician or surgeon in a hospital and in a home. The information is no less privileged that it was obtained in a hospital." 125 S.E.2d at 330.

In Newman v. Blom, 249 Iowa 836, 89 N.W.2d 349 (1958), the Supreme Court of Iowa quoted with approval from 58 Am. Jur., Witnesses, § 543, p. 304, as follows:

"Although, according to many courts, hospital records may be admitted in evidence *on behalf of a patient* in a proper case, in the absence of a waiver of the statutory privilege the records of a hospital or asylum, whether public or private, are inadmissible against a patient or his privy in interest, being within statutes making a physician incompetent to testify regarding matters of which he acquires knowledge *while acting in his professional capacity.* The introduction of the records would obviously be an evasion of such statutes, for although the physician would not actually testify, yet the privileged matter sought to be barred would in fact be effectually placed in evidence . . . ." (89 N.W.2d at 354 Emphasis in original)

And in Unick v. Kessler Memorial Hospital, 107 N.J.Super. 121, 257 A.2d 134 (1969) the court in applying the privilege to hospital records, gave the following explanation:

"The recording of confidential communications between physician and patient in official hospital records in no way diminishes the confidential nature of the communications. To find that the written hospital records sought by plaintiffs are not covered by the privilege, as an oral communication would plainly be, would be to frustrate the intent of the Legislature in enacting a physician-patient privilege in the first instance." (257 A.2d at 136)

See also Franklin Life Ins. Co. v. William J. Champion and Co., 350 F.2d 115, 130 (6th Cir. 1965); Heinemann v. Mitchell, 8 Ohio Misc. 390, 220 N.E.2d 616, 617 (1964); People v. Lapsley, 26 Mich.App. 424, 182 N.W.2d 601, 603 (1970); Weis v. Weis, 147 Ohio St. 416, 72 N.E.2d 245, 252 (1947); Carlton v. Superior Court for County of Los Angeles, 261 Cal.App.2d 282, 67 Cal.Rptr. 568, 68 Cal.Rptr. 469 (1968); Montwill Corporation v. Lefko-

witz, 66 Misc.2d 724, 321 N.Y.S.2d 975 (1971).

In determining the effect of A.R.S. § 12–2235 upon the admissibility or discovery of hospital records, we must avoid a construction which would render the statutory privilege meaningless or of no effect.[1] City of Phoenix v. Superior Court, 101 Ariz. 265, 419 P.2d 49 (1966); State v. Clifton Lodge No. 1174, Ben. & Pro.Ord. of Elks, 20 Ariz.App. 512, 514 P.2d 265 (1973). We take judicial notice of the fact that a great deal of medical practice occurs in hospitals and further note that hospitals require physicians to maintain extensive records of each patient to be filed with the hospital. In fact, regulations promulgated by the State Department of Health require hospitals to maintain certain records regarding each patient which would contain matters privileged under A. R.S. § 12–2235.[2] In light of the above-quoted case law, together with the necessity that physicians maintain records of their hospital treatment, we find that the privilege granted by A.R.S. § 12–2235 would be rendered meaningless if it were destroyed the moment that a physician transcribed communications from a patient or knowledge he has obtained from his examination of a patient into hospital records. We therefore hold that evidence otherwise privileged under A.R.S. § 12–2235 does not become non-privileged merely because it is contained in hospital records.

We now turn to the question of whether TMC has standing to assert the privilege. It is clear under the foregoing statutory

formulation of the privilege, that were the physician (also a nonparty) asked to produce the records, he would be *compelled* to assert the privilege. When, as here, neither the physician nor the patient are present to assert the privilege, are we to hold, as plaintiffs urge us, that in effect there is no privilege because no one with standing to claim it under the terms of the statute is a party to the proceeding?

Similar situations have arisen in other jurisdictions. However, the instances are few and far between and, so far as we can ascertain, no uniform, widely-pronounced rule of law has arisen from the cases. In State ex rel. Benoit v. Randall, supra, a staff physician of a hospital sued three other physicians on the ground that they discriminated against plaintiff by applying a different standard of medical and surgical practice to the care of his patients than was applied to the care of patients by other members of the staff. The plaintiff physician sought to subpoena "all official hospital charts, including x-ray pictures, of all patients admitted to Research Hospital in the years 1963, 1964 and 1965 under the care of every member of the staff of Research with privileges to practice General Surgery during said year." (431 S.W.2d at 108). The trial court had authorized a subpoena duces tecum as to records during 1964 of 55 doctors with the proviso that the hospital custodian of records "delete or mask over" the name and address of each patient to prevent the disclosure of such patient's name and identity. However, the order allowed the plaintiff physician to

1. We have been cited to a 1925 federal case holding that the physician-patient privilege embodied in A.R.S. § 12–2235 should be strictly construed and that since nurses are not specifically mentioned in the statute, information they possess is not privileged. Southwest Metals Co. v. Gomez, 4 F.2d 215 (9th Cir. 1925). This decision is not binding upon us and has been criticized. See Udall, Arizona Law of Evidence § 93, n. 57 (1960). Moreover, the court specifically held that "(t)he rule excluding hospital records kept under the direction of the physician has no application here . . . . " 4 F.2d at 217.

2. Regulation 4–2–3.1(A) provides that "(a)ll persons admitted to a hospital must be under the continuing care of a physician licensed to practice medicine and surgery in the State of Arizona." Regulation 4–2–4.1 provides that "(a)n accurate and complete physician examination and medical history [this would be privileged matter under A.R.S. § 12–2235 assuming the examination and history are performed and taken by a physician] shall be made and recorded within 48 hours after admission for each patient admitted to the hospital. These records shall be kept up to date and filed in an accessible manner with provisions for their safe storage in the hospital."

first examine the records *unmasked* in order to designate those records he desired to be produced and copied. The following language of the Supreme Court of Missouri held in effect that the trial court must protect absent holders of the privilege when no one authorized by statute to claim the privilege (i. e. the patient or the physician) is present to do so:

"(W)e believe that to permit the order of the trial court to stand would be to subvert the legislative effect intended by § 491.060, supra [a statutory physician-patient privilege similar to A.R.S. § 12–2235]. The patients whose identities would be disclosed and whose records would be scrutinized are not parties to the action in the trial court. They are entitled to protection from humiliation, embarassment or disgrace." 431 S.W.2d at 110.

In Unick v. Kessler Memorial Hospital, supra, the plaintiff sued both a physician and hospital for malpractice. Plaintiff's decedent had died on September 14, 1966. She sought to compel the defendant hospital to produce its operating room schedule and record book for September .14, 1966. The court, in denying this request, held as follows:

"In connection with the request for the operating room schedule and record book of Kessler, [the hospital] this information would involve producing records relating only partly to decedent and defendants. Likewise, these records would contain information regarding other persons and perhaps defendants not parties to this litigation. Persons treated at Kessler on September 14, 1966 have not waived the physician-patient privilege. It is not necessary that such persons specifically and individually each claim such privilege.

* * * * * *

The privilege thus granted by the statute may be claimed by Kessler [the hospital] to avoid having to produce the operating room schedule and record book sought by plaintiffs." 257 A.2d at 136–137.

In Gourdine v. Phelps Memorial hospital, 40 A.D.2d 694, 336 N.Y.S.2d. 316 (1972), plaintiff sued a hospital for malpractice. Plaintiff sought time data contained in anesthesia charts of patients unrelated to the litigation. While the court noted that the time data alone would not violate the physician patient privilege, it carefully limited its holding as follows:

"However, the disclosure should be limited to the time data. Other information contained in the charts and the identity of the patients should not be revealed." 336 N.Y.S.2d at 319.

In Montwill Corporation v. Lefkowitz, supra, the Attorney General of New York sought, in connection with an investigation, to discover the names and addresses of all persons referred to the petitioner hospital by the Abortion Information Agency as well as the duration, stay and type of operation performed on such patients.[3] The court refused to allow discovery as to the type of abortion operation performed and only allowed discovery of the names and addresses of patients because it felt "assured that the Attorney General will not release or make any public disclosure of the names of patients who have obtained abortions. . . . " (321 N.Y.S.2d at 977). Although the important aspect of the decision for our purposes is the fact that the hospital was allowed to assert the privilege, it is of interest to note the extent to which the court upheld the private privilege in the face of an official investigation in the public interest.[4]

---

3. While the Arizona Department of Health does have access to hospital records (A.R.S. § 36–406(1)(c), the department is foreclosed by statute from disclosing such information, A.R.S. § 36–404(2).

4. A similar conclusion was reached in New York City Council v. Goldwater, 284 N.Y.

296, 31 N.E.2d 31 (1940) where a special committee was designated by the city council of New York City to investigate. charges regarding mismanagement of the city hospital. The committee issued a subpoena duces tecum addressed to the Commissioner of Hospitals of the City of New York requiring produc-

Another case in which a court has disallowed the discovery of hospital records regarding persons who were not parties to the litigation (when their physicians were not present to claim the privilege) is Marcus v. Superior Court of Los Angeles, 18 Cal.App.3d 22, 95 Cal.Rptr. 545 (1971).[5]

■ We have neither discovered nor have we been cited to authority holding directly that a hospital cannot assert the privilege as to records containing confidential material when both the physician and the patient are absent from the proceedings. Despite the fact that A.R.S. § 12–2235 provides only that a physician or surgeon shall not be examined as to privileged information, our decision above that hospital records are covered by the physician-patient privilege mandates that the hospital assert this privilege when neither the patient nor his physician are parties to the proceeding. To hold otherwise would deprive a patient of the confidentiality granted him by A.R.S. § 12–2235 simply because neither he nor his physician have any interest in the outcome of the proceedings. Moreover, we feel obliged to carry this reasoning one step further and hold that when the holder of the physician-patient privilege is absent from the proceedings with no opportunity to assert the privilege, it is incumbent upon the trial court to frame its discovery orders in a manner which will protect an absent patient. Our holding is not only supported by the above-cited authorities, but also based upon a sound and reasonable construction of A.R.S. § 12–2235. It would be absurd to hold that our legislature intended that one unable to assert the privilege because of his absence from the proceedings has a lesser right to confidentiality under A.R.S. § 12–2235 than one who is a party to the proceedings.

■ Plaintiffs' next contention is that beyond TMC's bare assertion that portions of the record are privileged, it has failed to show that any part of the hospital records are privileged. Even if a showing of privilege is necessary,[6] we again stress the fact that neither Jane Doe nor her obstetrician have been given an opportunity to offer this proof. We are unable to hold that Jane Doe has forfeited any privilege she may have under § 12–2235, merely because the hospital may have failed to properly assert the applicability of this privilege.

■ The plaintiffs further assert that TMC has waived the privilege because of deposition testimony by the hospital's custodian of records wherein he disclosed certain non-privleged portions of the subject record to plaintiffs. While many Arizona cases have found a waiver of the privilege, see Throop v. F. E. Young and Co., 94 Ariz. 146, 382 P.2d 560 (1963); Patania v. Silverstone, 3 Ariz.App. 424, 415 P.2d 139 (1966), we have found no cases in which one asserting the privilege for an absent holder has been found to waive it. Only the patient or holder of the privilege is able to waive it. A.R.S. § 12–2236. Physicians who are required to assert the privilege on behalf of an absent patient have not been allowed to waive the privilege by testifying as to confidential matters. In Stauffer v. Karabin, 30 Colo.App. 357, 492 P.2d 862 (1971), the physician of a non-party patient had testified as to matters

---

tion of "(a)ll case records, reports, charts, diagnoses, x-rays and other records relating to the following patients . . . ." (31 N.E.2d at 31). The Court of Appeals of New York held that the Commissioner of Hospitals properly refused to produce records which would disclose information made confidential by a privilege statute similar to A.R.S. § 12–2235.

5. This case was cited by TMC. While we reject plaintiffs' attempt to distinguish the case on a variety of grounds, we note that plaintiffs have not met the fact that in that case, the hospital was asserting the privilege in a situation where neither the patient nor his physician was present to claim it.

6. It seems that many courts imply a privilege once the relationship of physician and patient is established (here it is admitted) while others require the *claimant* of the privilege to establish all the facts necessary to create the privilege in each instance. 8 J. Wigmore, Evidence § 2381 (McNaughton rev. ed. 1961); 58 Am.Jur. § 430.

covered by the privilege. The court held as follows:

> "Defendant argues that there could be no error in this instance, as the privilege is personal to the patient . . . [citations omitted] and that the statute is, in effect, inoperative unless invoked by the patient, his counsel, or personal representative. We do not agree.
>
> It is implicit in the wording of the statute that the relationship between a physician and his patient and any information acquired from that relationship are extemely private matters warranting a high degree of protection; that their disclosure by a physician should be prevented unless waived; and that the law will provide that protection at the time the disclosure is attempted, rather than merely providing a remedy after violation.
>
> Where the patient is not a party to the action and is not present or represented by counsel in the courtroom, the mandate of the statute directs the court to enforce the privilege unless a proper waiver is obtained, or a party to the proceedings protects the privilege, as in the case before us." (Citations omitted 492 P.2d at 864-865).

A similar situation was before the Supreme Court of Iowa in Shepherd v. McGinnis, 257 Iowa 35, 131 N.W.2d 475 (1964). The court held as follows:

> "Here, the dozen or more patients of defendant doctor about whom he was cross-examined were not parties and there is no indication or suggestion any of them were present at the trial. Their failure to claim the privilege which they were not in a position to assert may not be deemed a waiver thereof." 131 N.W.2d at 482.

See also Newell v. Newell, 146 Cal.App. 2d 166, 303 P.2d 839, 847 (1956). We cannot hold that the hospital waived the privilege for Jane Doe when there is no showing that Jane Doe had any opportunity to claim it.

We acknowledge that our pretrial discovery rules effect a salutary purpose. Throughout their memorandum in opposition to this special action, plaintiffs stress that all they desire from the records is to ascertain the locations of Dr. Trisler at various times on the date in question. Clearly this is not privileged material. See Gourdine v. Phelps Memorial Hospital, supra. However, they attempt to gain this information through a blanket inspection of the entire record of Jane Doe when the hospital asserts that certain portions are privileged. As noted above, privileged matters are not discoverable. A.R.C.P. 26(b)(1), 16 A.R.S. The trial court is vested with wide discretion in discovery matters. Cornet Stores v. Superior Court In and For Yavapai County, 108 Ariz. 84, 492 P.2d 1191 (1972). In light of this discretion, our discovery procedure is quite flexible and the trial court could order the hospital to designate the portions believed to be privileged and turn the records over to the court for in camera inspection. After reviewing the records, the trial court should then make available to plaintiffs portions of the record which it finds to be non-privileged without infringing in any manner upon the absent person's statutory privilege. See Carlton v. Superior Court, 261 Cal.App.2d 282, 67 Cal.Rptr. 568, 68 Cal.Rptr. 469 (1968). Nothing in our opinion is intended to restrict plaintiffs' rights to discover all relevant facts and documents which are not privileged.

Relief granted. The order compelling discovery is vacated. Any further proceedings are ordered to be consistent with this opinion.

HOWARD, J., and RUSKIN LINES, Judge of the Superior Court, concur.