548 P.2d 426

The STATE of Arizona ex rel. Bruce E. BABBITT, the Attorney General,
Petitioner,

v.

The Honorable Jack T. ARNOLD, Judge, Pima County Superior Court, Division #15, Respondent;

ABBEY FUNERAL CHAPEL, INC., an Arizona Corporation, Waly Krotenberg, Stanley Krotenberg, Adair Funeral Home, Inc., an Arizona Corporation, Martha J. Adair, Arthur Adair, Arizona Mortuary, Inc., an Arizona Corporation, Robert R. Long, Bring Funeral Home, Inc., an Arizona Corporation, Howard A. Bring, Valley Funeral Home, Inc., an Arizona Corporation, dba Deir's Valley Funeral Home, Michael J. Deir, William B. Addison, Jr., dba Evergreen Mortuary; Hudgel's–Swan Funeral Home, Inc., an Arizona Corporation, W. G. Hudgel, Palms West Corporation, an Arizona Corporation, dba Palms Mortuary, Charles H. Grisso, Chris A. Reilly, Mary A. Riley and Helen E. Reilly, dba Reilly Funeral Home, Tucson Mortuary, Inc., an Arizona Corporation, Leo Carrillo, Leo A. Carrillo, and Joseph H. Riley, Real Parties in Interest.

No. 2 CA–CIV 2124.

Court of Appeals of Arizona, Division 2.

April 13, 1976.

**334**

Bruce E. Babbitt, Atty. Gen., by Charles E. Buri, Asst. Atty. Gen., Tucson, for petitioner.

Cusick, Watkins, Stewart & Harris, by Frank H. Watkins, Tucson, for real party in interest Bring Funeral Home and Howard A. Bring.

Robertson, Molloy, Fickett & Jones, P. C., by Michael J. Meehan, Tucson, for real party in interest Adair Funeral Home and Arizona Mortuary.

W. Edward Morgan, Tucson, for real party in interest Abbey Funeral Chapel and Waly Krotenberg and Stanley Krotenberg.

OPINION

HATHAWAY, Judge.

In its answer to a request for production of documents, propounded by the real parties in interest, petitioner identified in pertinent part two documents as being relevant to petitioner's contention that the real parties in interest had conspired to fix the price of burial of deceased Pima County indigents. Petitioner refused to produce the documents, asserting the attorney-client privilege. Thereafter, a motion to compel discovery was filed by the real parties in interest. At the conclusion of the hearing on the motion, the respondent judge upheld petitioner's claim of privilege respecting a letter from Kenneth S. Scharman, Pima County Manager, to Howard Baldwin, Deputy Pima County Attorney, dated October 31, 1973. However, petitioner was ordered to produce for inspection a memorandum from Scharman to the Pima County Board of Supervisors dated January 2, 1975.

Petitioner now claims that the order was arbitrary and capricious and in excess of respondent's legal authority for the reason that the memorandum summarizes discussions between Pima County employees and Rose Silver and John Neubauer, deputy county attorneys, regarding formulation of legal strategy in dealing with the matter of indigent burials, therefore making applicable the attorney-client privilege.

The trial court is vested with wide discretion concerning discovery and, absent an abuse of discretion, its rulings will not be disturbed. *Jackson v. American Credit Bureau, Inc.*, 23 Ariz.App. 199, 531 P.2d 932 (1975); *Tucson Medical Center, Inc. v. Rowles*, 21 Ariz.App. 424, 520 P.2d 518 (1974). The burden of persuasion is on the objecting party to show that discovery should not be made. *Cornet Stores v. Superior Court*, 108 Ariz. 84, 492 P.2d 1191 (1972); *Tury v. Superior Court*, 19 Ariz.App. 169, 505 P.2d 1060 (1973). The state says that the document in issue is a memorandum from the county manag-

er to the county board of supervisors summarizing discussions between certain employees of Pima County and the County Attorney's office regarding the formulation of legal strategy in dealing with the matter of indigent burials. The real parties in interest raise two points which we can dispose of quickly—whether the attorney general can assert the privilege and whether the privilege has been waived.

 It is evident that if the action before us involved Pima County rather than the state, the county unquestionably would be in a position to assert the attorney-client privilege. The problem then arises as to whether the appearance in the case of the Arizona Attorney General acts as a waiver of the privilege since divulgence of the contents of the memorandum was made to him. However, such divulgence does not operate as a waiver, for, under A.R.S. § 41–192(A)(5), it was made to the attorney general in his capacity as legal advisor and representative of Pima County. In effect, he is acting as the county's agent in this regard and therefore, since he merely stands in the shoes of the county, he can assert the privilege equally effectively. Nor is there a waiver of the privilege by the fact that the state has brought charges against the real parties in interest. The attorney-client privilege is not the governmental privilege to which the real parties in interest allude, citing 8 Wigmore on Evidence, § 2379, p. 812 (1961). The attorney-client privilege is not waived under these circumstances by instituting legal action. See generally, Udall, Arizona Law of Evidence § 94 (1960). Since there is no waiver, the attorney general may assert the privilege for Pima County.

We are of the opinion that the attorney-client privilege pertains, if the facts stated by petitioner are true, and that the privilege has not been waived. The only problem remaining is whether the respondent court abused its discretion in ordering disclosure of the memorandum without ascertaining whether or not the privilege actually applied.

In the landmark Arizona case of *Mathews v. Pyle,* 75 Ariz. 76, 251 P.2d 893 (1952), the editor of the Arizona Daily Star sought the right to inspect certain documents in the Governor's office. The Governor claimed the documents were confidential in nature and that it would be detrimental to the best interests of the state to permit public inspection of their contents; therefore they should not be opened to the inspection of the public at large. Our Supreme Court said:

> "Certainly this court will not go so far as to approve the position of the Attorney General that the Governor of the state is the sole judge as to what information regarding the affairs of his office should be made public . . . It rests within the jurisdiction of the courts of the state to determine these questions. To arrive at the conclusion and judgment reached by the trial court in this case, based on a motion to dismiss, it had to assume as an established fact that the documents involved were either confidential and therefore privileged or that the disclosure of their contents would be detrimental to the best interests of the state or it had to hold that the Governor is the sole and final judge of those questions. We have above stated that we cannot sustain the latter position and of course a court may not assume facts upon which to base the judgment." 75 Ariz. at 80–81, 251 P.2d at 896.

The Supreme Court reversed and remanded the case with instructions to reinstate the petition and to require production of the documents for private examination by the trial judge to enable him to determine whether the documents were confidential and privileged or whether disclosure would be detrimental to the best interests of the state. The court pointed out that such questions could not otherwise be determined.

In other cases, in camera inspection has been utilized in an effort to insure that non-discoverable, privileged material is not disclosed. In a case involving a govern-

mental privilege, the Fifth Circuit Court of Appeals said:

" . . . [A] trial court is duty-bound, where it orders production of documents in which there are strong policy reasons against public disclosure, to limit the availability and use of those documents and their contents by carefully drawn protective provisions. [Citations omitted]." *Carr v. Monroe Manufacturing Co.,* 431 F.2d 384, 390 (1970).

See also: *Tucson Medical Center, Inc. v. Rowles,* 21 Ariz.App. 424, 520 P.2d 518 (1974).

The attorney-client privilege was asserted by the attorney in *Chapman v. Goodman,* 219 F.2d 802 (9th Cir. 1955), and an in camera inspection was utilized, the court citing *Mathews v. Pyle,* supra. We note that some courts have adopted the notion that in some circumstances an in camera inspection is not necessary. Such a theory is alluded to in *Natta v. Zletz,* 418 F.2d 633 (7th Cir. 1969), citing *Dura Corporation v. Milwaukee Hydraulic Products, Inc.,* 37 F.R.D. 470 (E.D.Wis.1965). In Dura Corporation, supra, the court stated:

"The court has now considered the briefs of the parties, the showing made by the plaintiff as to the nature of the documents both in its answers to interrogatories and the affidavit of Mark Clayton, plaintiff's patent counsel, and being fully advised, is of the opinion that the plaintiff has, under oath, disclosed sufficient information to enable the court to make its determination without an in camera inspection. Although, in practice, it is an acceptable procedure for parties by agreement, to submit disputed documents for in camera inspection, where, as here, a party is unwilling, and has made a sufficient showing of privilege, it would be unwarranted 'prying' for the court to inspect the documents." 37 F.R.D. at 471.

 We cannot adopt such a theory in light of *Mathews v. Pyle,* which was quoted by Division One of this court in

*City of Phoenix v. Peterson,* 11 Ariz.App. 136, 462 P.2d 829 (1969). Following the reasoning of that case, we think it is incumbent upon a trial court not to assume the facts which would give rise to a privilege, but rather, when a prima facie showing of a privilege is made, to decide whether disclosure should be required after an in camera inspection. Consequently, we hold that the respondent court's order for production without an examination of the document was arbitrary.

We assume jurisdiction and direct the respondent court to vacate the order for production and to conduct further proceedings consistent with this opinion.

HOWARD, C. J., and KRUCKER, J., concurring.